603 A.2d 637

**Melvin A. DAVIS, Appellant,**

**v.**

**EQUIBANK and Mary Jo Malesky.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1991.

Filed Feb. 25, 1992.

Jan I. Medoff, Pittsburgh, for appellant.

Edward Yurcon, Pittsburgh, for appellees.

Before CIRILLO, FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order granting appellees' preliminary objections in the nature of a demurrer and dismissing appellant's complaint. Appellant raises one issue for our consideration, whether appellant stated a cause of action for which relief could be granted? We affirm.

The facts of relevance, briefly stated, are: on January 12, 1990, an Equibank branch located in the Hazelwood section of Pittsburgh was the subject of a robbery. During the course of the police investigation an officer displayed a number of photographs to the teller involved, appellee Malesky. Appellee Malesky identified one of the photos as the

perpetrator of the robbery. The police subsequently arrested the subject of the identified photo, appellant Davis, and charged him with robbery of the bank. Appellant was incarcerated on February 7, 1990 until his preliminary hearing on February 23, 1990, at which time appellee Malesky testified that she did not believe that appellant perpetrated the crime as the perpetrator was taller than Davis. Davis was then released from custody. Appellant later filed an action for negligence against appellees asserting that appellee Malesky was negligent in identifying appellant as the perpetrator of the robbery which resulted in various damages connected to his incarceration.[1] Appellees filed preliminary objections in response to appellant's complaint asserting that appellant had not pled a cognizable action under the laws of Pennsylvania. The preliminary objections were granted and this appeal followed.

We start our analysis and commentary with the proviso that we are deciding this case with a narrow focus. Our holding today shall reflect a decision relating only to what has been termed "negligent identification." That is, where an individual identifies an individual as a perpetrator of a crime and where such identification turns out to be incorrect or mistaken. There are many situations where some form of "negligent" behavior results in an erroneous arrest of another. There may be circumstances where the balancing of interests tips the scales in the direction of allowing recovery for an arrest which is the result of another's negligence. Those interests appear readily with only minimal contemplation. With regard to the provision of information to law enforcement authorities, it is generally recognized that to allow recovery where an individual's provision of incorrect or mistaken information results in the arrest of another would have a substantial chilling effect upon the

---

1. The specific allegations of negligence in appellant's complaint state appellee Malesky was negligent in, misidentifying appellant, in failing to be certain of the actor before informing the police that the appellant was the actor in question, in acting too fast and hastily, in failing to adequately examine the photo array before choosing appellant and in being inattentive. (Appellant's complaint par. 8.)

willingness of citizens to come forward with information relevant to criminal investigations. We are certain that law enforcement authorities would assert that it is difficult enough under the present status of the law to conduct investigations and gather information without the natural dissuasion that potential liability would create.

On the other hand, we are not insensitive to the consequences of an individual being incorrectly accused of a crime, much less actual arrest for a crime one did not commit. The present case amply illustrates the unfortunate, and, perhaps, unavoidable, side of any criminal justice system. In any system where individuals are subject to arrest for violation of laws there is a substantial risk that some individuals who are arrested will be exonerated of the initial suspicion that precipitated their arrest. In such cases, they may be said to have suffered an unfortunate and possibly avoidable embarrassment, humiliation and loss of freedom. We do not dismiss these interests lightly. However, it appears clear that the weight of authority is contrary to allowing recovery under the factual pattern presented here.

Although it is asserted by the parties to the present appeal that there are no cases in Pennsylvania dealing with the viability of a negligence action where the injury is arrest as the result of another's negligence, there are cases in other jurisdictions dealing with this precise issue. In *Shires v. Cobb & Mayfair Market*, 271 Or. 769, 534 P.2d 188 (1975), the respondent was arrested for the robbery of Mayfair Market. Respondent was identified by the cashier who had been robbed as the perpetrator of the robbery. The cashier's identification resulted in the respondent's arrest. However, the charges were later dismissed whereupon the respondent filed suit against the cashier and the market. The respondent received a jury verdict as a result of the "negligent identification" of respondent as the robber. On appeal, both defendants demurred, which was permissibly raised, under Oregon law, for the first time on appeal. In reversing the verdict below, the Supreme Court

of Oregon opined that it was apparent that respondent had failed to state a cause of action upon which relief could be granted. The court stated: "[i]t is the law of this state (and we have found no cases from other jurisdictions to the contrary) that public policy will protect the victim of a crime who, in good faith and without malice, identifies another as the perpetrator of the crime, although that identification may, in fact, be mistaken." *Id.*, 271 Or. at 772, 534 P.2d at 189.

Under a similar factual pattern, the misidentification of an individual as a robbery, the District Court of Appeal of Florida, in *Manis v. Miller*, 327 So.2d 117 (1976), made a similar holding to the one found in *Shires*, and, in fact, quoted from that case. The Florida Court stated:

> [c]learly the question posed is one of substantial public interest and great concern. Prompt and effective law enforcement is directly dependent upon the willingness and cooperation of private persons to assist law enforcement officers in bringing those who violate our criminal laws to justice. Unfortunately, too often in the past witnesses and victims of criminal offenses have failed to report crimes to the proper law enforcement agencies. Private citizens should be encouraged to become interested and involved in bringing the perpetrators of crime to justice and not discouraged under apprehension or fear of recrimination.

*Id.*, 327 So.2d at 117. In *Turner v. Mellon*, 41 Cal.2d 45, 257 P.2d 15 (1953), the Supreme Court of California considered a case where, again similar to here, an individual had been identified as the perpetrator of a series of robberies of a Western Union office. After the suspect had been arrested and detained overnight the identifying witness decided that, despite the fact that the suspect bore a striking resemblance to the perpetrator, he could not be certain that the suspect was indeed the one who had committed the various robberies. The individual, after being released from custody, filed a suit against the witness and Western Union. Despite discussing concepts of false imprisonment,

the Court's commentary in reversing a plaintiff's verdict is instructive, the Court said:

Plaintiff relies upon *Turner v. Elliot,* (citation omitted) wherein understandable and commendable concern is shown for the victims of mistaken identification and ensuing false arrest. We share this concern but we think that proper concern for the victim in such a case must stop at some point along the line where to support his claims further would contravene the public interest. We think it serves the public interest and, hence, the line should be drawn here—that citizens who have been criminally wronged may, without fear of civil reprisal for an honest mistake, report to the police or public prosecutor the facts of the crime and in good faith, without malice, identify to the best of their ability to such public officers the perpetrator of the crime. Investigation and action from then on are the responsibility of the public employes who are skilled in that work and who are paid to perform it. The victims of crimes should not be held to the responsibility of guarantors of the accuracy of their identifications.... A view contrary to that ... would, we think, inevitably tend to discourage a private citizen from imparting information of a tentative, honest belief to the police and, hence, would contravene the public interest which must control.

New York law appears to be no more sympathetic to the victim of a mistaken arrest. Again under a similar factual pattern the Supreme Court of New York, Appellate division, in *Collins v. Brown,* 129 A.D.2d 902, 514 N.Y.S.2d 538 (1987), upheld the granting of summary judgment against the individual arrested on actions for false imprisonment, malicious prosecution, negligence and defamation. With regard to the negligence count the court concluded that the negligence count was really an action for negligent misrepresentation but found that action flawed by the fact that it was the police who relied upon the identification and made the arrest.

Several other cases have dealt with other allegations of negligence which either caused or contributed to an individual's arrest on grounds later determined to have been mistaken. The overwhelming majority of these cases have also disallowed recovery on a negligence theory. For instance, in *LaFontaine v. Family Drug Stores, Inc.*, 33 Conn.Sup. 66, 360 A.2d 899 (1976), a Connecticut court, in granting judgment notwithstanding the verdict, considered a case where a pharmacist's suspicions were aroused regarding the filling of a prescription. The pharmacist notified the police that, for a variety of reasons, he believed that the plaintiff appeared to be attempting to have a forged prescription filled. After the plaintiff picked up the prescription, she was arrested. The plaintiff successfully sought a jury verdict but defendant sought and was granted judgment N.O.V. The Connecticut court determined that there was not a duty of reasonable care owed the plaintiff under the facts presented there. The court quoted with approval from the Restatement of Torts:

> Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this section even though the information proves to be false and his belief therein was one which a reasonable man would not entertain.

Restatement, 3 Torts § 653, comment g. The court further stated:

> The rule exonerating an honest informer rests on the premise that either (1) there is no duty of reasonable care owed to the person informed against and as a consequence there is no negligence on which the informer can be held liable, or (2) there is a privilege or immunity granted to the informer in performing his public responsibility.... On either premise, the rule derives from sound public policy that the efficient enforcement of criminal law requires that a private person who renders aid to the

police by giving honest, even if mistaken, information about crime should be given effective protection.

*Id.,* 360 A.2d at 905.

We would hesitate to state that an individual has no duty owed to another whom he implicates as the perpetrator of a crime. The general rule as to determining whether a legal duty exists to another has been stated that where the parties are strangers to one another the general duty imposed upon all persons not to place others at risk of harm through their actions applies. The scope of this duty is limited, however, to those risks which are reasonably foreseeable. *Alumni Association v. Sullivan,* 369 Pa.Super. 596, 535 A.2d 1095 (1987). If one includes within the definition of harm incarceration, then it would appear that under the facts of the present case, and those like it, the witness identifying the suspect certainly would have a duty to that individual because it is clearly foreseeable that as a result of one's identification of another that that individual may be incarcerated as a result. Consequently, rather than simply concluding that there was no duty owed appellant by appellees, we believe we would be on sounder legal ground by relying upon the well stated public policy considerations outlined above.

There is little reason to think that the policy considerations that shaped the above holdings are any different than the policy considerations present in Pennsylvania. It is safe to say that Pennsylvania, like the other states represented in the above decisions, certainly has an interest in effective law enforcement. We further recognize that the potential of civil liability for the provision of mistaken information to law enforcement agents would have a chilling effect on citizen cooperation and the provision of valuable information by citizens to police. Further, we are in agreement that the public interest in investigation of crime outweighs the recognition of a negligence action for negligent identification of a suspect. Consequently, we see no reason to take a divergent path from the authorities outlined above. Relying upon the weight of authority and a weighing of

policy considerations, we decline to recognize a cause of action for negligent identification of another as a perpetrator of a crime. Consequently, for these reasons, we affirm the order appealed from.

Order affirmed.