Brenda JONES, Plaintiff,

v.

Janet AUTRY and Rack Room Shoes, Inc. and John Does A and B, Defendants.

No. 3:99CV898LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 7, 2000.

David C. Dunbar, Michael Todd Bartley, Harris, Geno & Dunbar, P.S., Jackson, MS, for Plaintiff.

Mitzi Dease Paige, U.S. Atty's Office, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Rack Room Shoes, Inc. (Rack Room) for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure or, in the alternative, for judgment as a matter of law pursuant to Rule 56. Plaintiff Brenda Jones has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that defendant's motion is well taken and should be granted.

As set forth in the court's April 25, 2000 opinion, the events giving rise to this lawsuit first occurred on or about February 13, 1997, when Janet Autry reported the apparent theft of her wallet and credit cards to the Veterans Administration (VA) Police Service. Autry is an employee of the G.V. "Sonny" Montgomery VA Medical Center in Jackson, Mississippi and has been so employed for nearly twenty-five years. According to her affidavit, on Wed-

first presents her claim to a federal agency    and is denied relief).

nesday, February 12, 1997, Autry was attempting to write a check at Wal–Mart when she realized that the wallet containing her credit cards and driver's license was missing from her purse. Although she initially thought that the wallet had fallen out of her purse at work and into her desk drawer, when she was unable to locate the wallet upon returning to work the next day, Autry began to suspect that it may have been stolen from her purse while she was away from her desk reviewing records on February 10.[1] Autry claims that she had possession of the wallet as late as Sunday afternoon, February 9, when she wrote a check and used her wallet for identification purposes. After that, though, she apparently returned home and did not leave again until she went to work the next day.

To verify her suspicion that her wallet had been stolen, Autry began calling credit card companies to see if any unauthorized charges had been made on any of her accounts. Upon learning that such charges had been made on Monday, February 10 while she was at work, Autry realized that her wallet had, in fact, likely been stolen from her desk. Autry thus notified her immediate supervisor and contacted the VA Police Service to report the suspected theft.

Michael Williams, the officer assigned to investigate the theft, questioned Autry as to potential suspects. When Autry informed Williams that she had no idea who might have stolen her wallet, Williams questioned her as to the persons having access to her office. Williams then conducted a follow-up interview with the only person that Autry named, but concluded that the man interviewed was not likely to have been the perpetrator. As plaintiff was not named as a potential suspect by Autry, she was neither contacted nor interviewed by Williams at this time. In fact, no one began to suspect plaintiff until Autry and Williams spoke with Eric Snow, the manager of Rack Room, one of the stores at which Autry's credit cards had been used.

Based upon Snow's description of the customer using Autry's credit card—a black female, approximately 5'7" tall, in her late twenties, with shoulder length hair [2]—and information provided by other VA employees, Williams concluded that it was the plaintiff who had stolen Autry's wallet and made unauthorized charges on her credit cards. Williams thus asked Autry which black females had access to her desk. Autry named a couple of individuals, but the plaintiff was again not among them. According to Autry, Williams then specifically asked whether the plaintiff could have accessed her desk. Autry confirmed that plaintiff occasionally visited the area to conduct business with her secretary, who was also the timekeeper, and that she could, therefore, have entered her office. Having learned that the plaintiff had access to Autry's office, Williams obtained a photograph of the plaintiff and presented it to Snow, who verified that the person in the photograph was, indeed, the person who had come into the store and purchased shoes with Autry's credit card on the date in question. Williams then transported Autry to the Jackson Police Department in a VA-marked vehicle to file charges against plaintiff.

Plaintiff was arrested by the Jackson Police Department on March 5, 1997 and charged with credit card fraud. She was indicted on August 14, 1997. As a result of her arrest, plaintiff was placed on administrative leave without pay from her employment with the VA Hospital. Plaintiff's leave lasted for a period of two years, and, according to plaintiff, dictated that she not accept substitute employment.

---

**1.** According to Autry's affidavit, her secretary was absent on that day.

**2.** According to Autry's affidavit, the time and date of the purchase at Rack Room Shoes were reflected on the receipt, which would presumably have aided the manager in recalling the transaction.

Subsequently, on April 5, 1999, the charges against plaintiff were dismissed for lack of speedy trial. A few months later, on November 9, 1999, plaintiff filed this lawsuit, alleging that she has suffered great emotional and financial distress as a result of the negligent, grossly negligent, reckless, malicious and/or intentional false allegations made against her by Autry and Rack Room. Plaintiff additionally claims to have suffered great humiliation, loss of liberty and embarrassment, for all of which she seeks to recover an unspecified amount of damages, along with attorney's fees, interest and costs. In response, defendant Rack Room filed the instant motion for judgment on the pleadings or, alternatively, for summary judgment, urging dismissal of plaintiff's complaint on the ground that Mississippi provides no cause of action as alleged by plaintiff, i.e., that plaintiff is unable to sustain a cause of action against Rack Room or its employee under her stated theories of negligence, gross negligence, recklessness, malicious prosecution, respondeat superior and failure to train and supervise. Plaintiff, in turn, maintains that her complaint states a viable cause of action against Rack Room and, insofar as defendant's request for summary judgment is concerned, asks this court to delay ruling on the motion for 120 days, pursuant to Rule 56(f), during which she can conduct discovery to oppose the motion.

■ Considering first plaintiff's claims of negligence, gross negligence and recklessness, the Mississippi Supreme Court recognizes that "[t]he law allows a wide latitude for honest action on the part of the citizen who purports to assist public officials in their task of law enforcement." *Downtown Grill, Inc. v. Connell,* 721 So.2d 1113, 1117 (Miss.1998). Moreover, other courts have specifically held that there is no cognizable cause of action for negligent identification of a criminal suspect. *See Jaindl v. Mohr,* 541 Pa. 163, 661 A.2d 1362, 1364–65 (1995) ("join[ing] the ranks

of other jurisdictions who have ... refused to recognize a cause of action for negligent identification"); *Davis v. Equibank,* 412 Pa.Super. 390, 603 A.2d 637, 639 (1992) ("declin[ing] to recognize a cause of action for negligent identification of another as a perpetrator of a crime"); *LaFontaine v. Family Drug Stores, Inc.,* 33 Conn.Supp. 66, 360 A.2d 899 (1976) (quoting, with approval, the Restatement of Torts, as follows: "Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this section even though the information proves to be false and his belief therein was one which a reasonable man would not entertain."); *Shires v. Cobb,* 271 Or. 769, 534 P.2d 188, 189 (1975) (noting that "[i]t is the law of this state (and we have found no cases from other jurisdictions to the contrary) that public policy will protect the victim of a crime who, in good faith and without malice, identifies another as the perpetrator of the crime, although that identification may, in fact, be mistaken"); *Turner v. Mellon,* 41 Cal.2d 45, 257 P.2d 15, 17–18 (1953) (holding that "victims of crimes should not be held to the responsibility of guarantors of the accuracy of their identifications.... A view contrary to that ... would, we think, inevitably tend to discourage a private citizen from imparting information of a tentative, honest belief to the police and, hence, would contravene the public interest which must control"). Rack Room has offered the affidavit of Snow, the employee who identified plaintiff to Williams, in which he states that he "simply cooperated with Officer Williams' investigation and provided truthful information in response to his questions." Plaintiff has offered no contrary evidence, despite having had the opportunity to do so.[3] Indeed, in response to defendant's proffer, plaintiff has failed to offer any

---

**3.** As Snow evidently no longer works for Rack Room Shoes, there is no apparent reason that plaintiff could not have obtained an affidavit from him.

evidence whatsoever which would indicate that Snow was not acting in good faith when he identified plaintiff as the customer who had used the stolen credit card. The court thus concludes that summary judgment is appropriate as to plaintiff's claims of negligence, gross negligence and recklessness.

■ Turning now to plaintiff's claim of malicious prosecution, the court likewise concludes that summary judgment is appropriate. According to the Mississippi Supreme Court, in order to sustain a cause of action for malicious prosecution, the plaintiff must prove each of the following:

> (1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the insistence of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution.

*Nassar v. Concordia Rod and Gun Club, Inc.*, 682 So.2d 1035, 1042 (Miss.1996). In the instant case, plaintiff has wholly failed to prove that Rack Room or its employee, Snow, instituted or continued any judicial proceedings against plaintiff. In fact, plaintiff merely alleges that Rack Room's employee "accused" Jones of a crime. Rack Room, on the other hand, has offered the affidavit of Snow, in which he states that he "did nothing whatsoever to advise, encourage, or pressure Ms. Autry or Officer Williams to pursue charges" and that he "did not personally accuse Ms. Jones of any crime." Accordingly, the court concludes that plaintiff has failed to raise a genuine issue of material fact with respect to at least one element of her claim for malicious prosecution and that summary judgment should, therefore, be granted.

■ Finally, as for plaintiff's claim against Rack Room for failure to train or supervise its employees in order to avoid mistaken identifications, the court again concludes that summary judgment is warranted, as plaintiff has cited, and the court is aware of, no authority for such claim.

Based upon the foregoing, then, the court concludes that summary judgment should be and is hereby granted as to each of plaintiff's claims against defendant Rack Room.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.