**Foman v. Albert Einstein Medical Center**

*Harry J. Oxman,* for plaintiff.
*Frank H. Griffin,* for defendants.

TERESHKO *J.,* March 23, 2011—Plaintiff appeals from this court's order dated August 11, 2010, granting defendants, Albert Einstein Medical Center, Albert Einstein Healthcare Network, Barry Freedman, James McCafferty, Russell Jones, and Christopher Brown's (collectively, "defendants") preliminary objections dismissing plaintiff's complaint.

## FACTUAL BACKGROUND

On November 26, 2007, defendant Barry Freedman, President of Albert Einstein Medical Center, received a threatening letter in his office, dated November 14, 2007 and postmarked November 19, 2007. (Complaint, ¶18) The letter, which included the Social Security numbers of Freedman and seven (7) other employees, stated that the author had worked in the file room for seven years, but was fired due to racial hatred. (Complaint, Exhibit "A") It was signed "SF." (*Id.*) In the letter, the author stated that they knew the names, addresses and Social Security numbers of eight (8) employees of Albert Einstein. (Plaintiff's

response to defendants preliminary objections, Exhibit A). The letter listed their names and Social Security numbers and threatened misuse of this information.

An investigation conducted by Russell Jones and Christopher Brown, Director and Assistant Director of the Department of Protective Services, respectively, and James McCafferty, an investigator for the department, concluded that the suspected author of the letter was plaintiff, Stephanie Foman. (Complaint, ¶19-21) Plaintiff was employed by Albert Einstein Medical Center and Albert Einstein Healthcare Network for approximately eight (8) years prior to her termination on September 14, 2007. (Complaint, ¶14-15)

Thereafter, on or about December 1, 2007, James McCafferty contacted the Northwest Detective Bureau of the Philadelphia Police Department to request that the Bureau conduct an independent investigation to determine the author of the letter and if criminal charges against the author were warranted. (Complaint, ¶21) The Northwest Detective Bureau declined to investigate further. *Id.* Approximately four (4) days later, Russell Jones met with Assistant District Attorney, Andrew M. Carobus, to request an investigation by the Philadelphia Police Department. (Complaint, ¶21) When communicating with the Detective Bureau and the District Attorney's Office, employees of Einstein's Protective Services Department expressed their suspicions that Stephanie Foman authored the letter. (Defendants' preliminary objections, pg. 2)

The matter was assigned to the Major Crimes Unit of the Philadelphia Police Department. The Major Crimes Unit obtained a search warrant of Ms. Foman's residence

as well as a warrant for her arrest. (Complaint, ¶23-24) A search of Foman's home was conducted on January 14, 2008. (Complaint, ¶24)

On January 22, 2008, Foman was charged with making terroristic threats and identity theft. (Defendants' preliminary objections, Exhibit 3) At Foman's preliminary hearing before the Honorable Nazario Jimenez, Jr., all charges were held for trial in Philadelphia Municipal court. (*Id.*) Foman was subsequently convicted in Philadelphia Municipal court in February, 2009 of both charges by Honorable Thomas Gehret. (Defendants' *Id.*) Foman appealed the convictions to the Philadelphia Court of Common Pleas and requested a de novo trial. At the subsequent trial before the Honorable Joyce Eubanks in the Philadelphia Court of Common Pleas, Foman was later acquitted of these charges. (*Id.*)

Plaintiff Stephanie Foman thereafter commenced this action against defendants, Albert Einstein Medical Center, Albert Einstein Healthcare Network, Barry Freedman, James McCafferty, Russell Jones, and Christopher Brown (hereinafter collectively, "defendants"), by filing her complaint on January 11,2010. Plaintiff's complaint alleges counts for malicious prosecution and infliction of emotional distress.

On June 16, 2010, defendants filed preliminary objections to plaintiff's complaint arguing that plaintiff's complaint is legally insufficient pursuant to Pa.R.C.P. 1028(a)(4). (Defendants' preliminary objections, pg. 1). Defendants alleged that plaintiff could not prove malicious prosecution because defendants did not institute criminal proceedings against her. (Defendants'

preliminary objections, ¶3) Further, plaintiff was convicted in Municipal court on February 20, 2009, demonstrating that defendants had probable cause to suspect plaintiff was the author of the letter. (Defendants' preliminary objections, ¶4)

Defendants' preliminary objections also asserted that plaintiff could not prove intentional infliction of emotional distress because defendants' conduct did not rise to the level of outrageousness which is an element of required to be proven under the law. (Defendants' preliminary objections, ¶6) Additionally, defendants asserted that plaintiff's negligent infliction of emotional distress claim must fail because Pennsylvania does not permit negligence claims relating to the identification of criminal suspects to law enforcement. (Defendants' preliminary objections, ¶7)

On June 30, 2010, plaintiff filed her response to defendants' preliminary objections.

By order dated August 11, 2010, this court granted defendants, Albert Einstein Medical Center, Albert Einstein Healthcare Network, Barry Freedman, James McCafferty, Russell Jones, and Christopher Brown's (collectively, "defendants") preliminary objections.

On August 26, 2010, plaintiff filed her notice of appeal from the August 11, 2010 order and subsequently issued her 1925 statement of errors alleged on appeal.

The sole issue before this court is:

Whether this court erred when it sustained the defendants' preliminary objections and dismissed the plaintiff's complaint on the basis of legal insufficiency

where plaintiff has failed to prove a prima facie case for malicious prosecution, intentional infliction of emotional distress or negligent infliction of emotional distress.

## LEGAL ANALYSIS

A preliminary objection in the nature of a demurrer tests the legal sufficiency of the plaintiff's complaint. *Smith v. Wagner*, 588 A.2d. 1308 (Pa. Super. 1990). The standard of review in granting preliminary objections is that "all material facts set forth in the complaint, as well as all inferences reasonably deductible therefrom, are admitted as true." *Youndt v. First Nat'l Bank*, 868 A.2d 539, 542 (Pa. Super. 2005). "A preliminary objection in the nature of a demurrer must be sustained where it is clear and free from doubt that the law will not permit recovery under the facts alleged." *Petsinger v. Dept. of Labor & Indus.*, 988 A.2d 748, 753 (Pa. Cmwlth. 2010) (citing *Africa v. Horn*, 701 A.2d 273 (Pa. Cmwlth.1997)).

On an appeal from an order sustaining preliminary objections in the nature of a demurrer, the appellate court's scope of review is plenary, allowing it to review the whole record. *Morley v. Gory*, 814 A.2d 762, 763 (Pa. Super. 2002) (citing *Ham v. Sulek*, 620 A.2d 5, 8 (Pa. Super. 1993). "In some contexts, when issues of fact are raised by preliminary objections, the trial court may receive evidence by depositions or otherwise." Morley, 814 at 763 (quoting *Mellon Bank, N.A. v. Fabinyi*, 650 A.2d 895, 899 (Pa. Super. 1994). "However, preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may

be considered to dispose of the legal issues presented by a demurrer." *Id.*

Pennsylvania Rule of Civil Procedure 1028(a)(4) establishes the right of a party to file preliminary objections to any pleading on the grounds of legal insufficiency. On appeal, plaintiff contends that this court erred in sustaining the defendants' preliminary objections and dismissing plaintiff's complaint.

Plaintiff's complaint alleges malicious prosecution and both intentional and negligent infliction of emotional distress.

In order to support a claim for malicious prosecution, plaintiff must prove defendant instituted proceedings against her (1) without probable cause, (2) with malice, (3) and the proceedings must have terminated in favor of the plaintiff. *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249*, 518 Pa. 517, 520-21, 544 A.2d 940, 941 (1988).

Plaintiff's claim for malicious prosecution must ultimately fail because defendants did not institute proceedings against her without probable cause.

Pennsylvania has followed the Restatement (Second) of Torts on the law of malicious prosecution. *Bradley v. Gen. Accident Ins. Co.*, A.2d 707, 711 (Pa. Super. 2001). See *Gallucci v. Phillips & Jacobs, Inc.*, 614 A.2d 284, 290 (Pa. Super. 1992); *Shelton v. Evans*, 437 A.2d 18, 20 (Pa. Super. 1981). Restatement (Second) of Torts §653, comment explains the elements needed to sustain a cause of action for malicious prosecution:

A private person who gives to a public official

information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable...even though the information proves to be false and his belief was one that a reasonable man would not entertain. *Bradley v. Gen. Accident Ins. Co.*, 778 A.2d 707, 711 (Pa. Super. 2001), citing, Restatement (Second) of Torts §653, comment G.

The Restatement distinguishes an individual's offer of information in good faith leading to the procurement of criminal proceedings from a situation in which a defendant either provides knowingly false statements to a public official, or the defendant unduly pressures an official to institute proceedings, depriving the official of the use of discretion. *Id.* The main inquiry must be whether the official retained independent discretion in the decision to institute proceedings against the plaintiff.

In the case at hand, defendants did not institute proceedings against the plaintiff as required to state a claim for malicious prosecution. Defendants conducted an internal investigation following defendant Freedman's receipt of the threatening letter and reported their findings

to the Northwest Detective Bureau of the Philadelphia Police Department and Assistant District Attorney, Andrew Carobus. Carobus assigned the case to the Major Crimes Department of the Philadelphia Police Department, and, after independent investigation, the department determined that charges of making terroristic threats with the intent to terrorize another and identity theft were warranted. Plaintiff does not offer any evidence that defendants pressured Carobus or the Police department in any way or compromised their independent discretion in deciding whether criminal charges against plaintiff were warranted. Additionally, plaintiff also does not offer any evidence that defendants provided knowingly false statements to Carobus or the police department. The information provided was based upon defendants' internal investigation, and the public officials responsible for deciding to criminally charge plaintiff were entitled to accept or reject the information as they deemed proper under the circumstances.

Second, plaintiff's claim for malicious prosecution must fail because defendants had probable cause to request that the Commonwealth initiate an investigation of plaintiff.[1] Probable cause is "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Miller v. Pennsylvania R.R. Co.,* 371 Pa. 308, 314, 89 A.2d 809, 811-12 (1952). The court in *Byers v. Ward* further elaborates, "[w]hile the return of a true bill of indictment

---

1. The second element of a claim for malicious prosecution, malice, can be inferred from lack of probable cause. *Hugee v. Pennsylvania R.R. Co.*, 376 Pa. 286, 291, 101 A.2d 740, 743 (1954).

by the grand jury may constitute prima facie evidence of probable cause, the corollary of that legal principle is that an acquittal is not sufficient in itself to establish want of probable cause." *Byers v. Ward*, 368 Pa. 416, 421, 84 A.2d 307, 310 (1951). The Restatement (Second) of Torts § 667, "Effect of Conviction or Acquittal," succinctly states "The conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means."

Following an internal investigation, defendants possessed a reasonable ground of suspicion that plaintiff, a recently terminated file room employee with the same initials as the author, sent defendant Freedman the letter. Based upon the information defendants provided and the Major Crimes Department's independent, five-week investigation, law enforcement and the District Attorney's Office determined that charges against plaintiff were warranted. Thereafter, Judge Nazario Jimenez, Jr. found that there existed a prima facie case for the criminal charges after hearing the evidence at plaintiff's preliminary hearing. Judge Jimenez heard evidence and held all the charges for trial in Municipal Court. Even though plaintiff's convictions were subsequently overturned in the Philadelphia Court of Common Pleas, she was found guilty of identity theft and making terroristic threats in Municipal Court in February, 2009 by Judge Gehret, defendants' reasonable suspicion that plaintiff committed a crime is adequately supported by plaintiff's arrest following a police investigation, the holding over of charges at the preliminary hearing and the District Attorney's

successful prosecution of plaintiff at the Municipal Court level. Therefore, plaintiff's malicious prosecution must fail.

Analogous to plaintiff's claim for malicious prosecution, her claim for intentional and negligent infliction of emotional distress must also fail.

Pennsylvania courts have looked to the Restatement (Second) of Torts §46(1) for guidance on intentional infliction of emotional distress.[2] The Restatement provides, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The prohibited conduct has been described as that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts §46, comment d. Where the allegedly tortious conduct described in the complaint is not sufficiently outrageous and extreme, the court must dismiss the claim as a matter of law. *Keim v. County of Bucks,* 275 F.Supp.2d 628, 635-36 (E.D.Pa. 2003). Cases where courts have found that the conduct of defendants were sufficiently outrageous involved acts of fraud or concealment. See *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3rd.Cir. 1979); *Banyas v. Lower Bucks Hospital,* 437 A.2d 1236 (Pa.Super. 1981); *Papieves*

---

2. Restatement (Second) of Torts § 46 has never been formally a - opted in Pennsylvania, but our Supreme Court in *Taylor v. Albert Einstein Med. Center,* 562 Pa. 176, 754 A.2d 652 (2000), cited the Restatement as providing the minimum elements necessary to establish the cause of action.

*v. Lawrence*, 437 Pa. 373, 263 A.2d 818, (1980).

Plaintiff's complaint falls well short of demonstrating the requisite level of "outrageous conduct" and therefore must be dismissed.

The November 2007lLetter was authored by a terminated file room employee with the initials "SF." Plaintiff Stephanie Foman was employed by Albert Einstein Medical Center and Albert Einstein Healthcare Network for approximately eight (8) years prior to her termination on September 14, 2007, which is just two (2) months prior to the November 14, 2007 letter. The conduct of defendants, in reporting this letter to law enforcement and conveying that they suspected Foman was the author of the letter, does not constitute "outrageous conduct."

In response to a letter threatening to disclose and misuse employee Social Security numbers, defendants conducted an independent investigation to protect their employees. Conducting their investigation defendants determined that plaintiff was the suspected author of the letter. Defendants then reported their investigation over to the Major Crimes Unit of the Philadelphia Police Department indicating that they suspected plaintiff and asked that the Philadelphia Police Department to conduct further investigation. Defendants did not falsify information to law enforcement or attempt to perpetrate a fraud in conducting their investigation.

The Philadelphia Police Department then conducted its investigation and subsequently arrested plaintiff. Although plaintiff was successful at her second criminal trial, the Philadelphia Police Department had sufficient evidence to charge her with the aforementioned crimes,

Judge Jiminez found there to be a prima facie case that plaintiff committed these crimes at the preliminary hearing and Judge Gehret found that plaintiff committed these crimes beyond a reasonable doubt in plaintiff's municipal court trial.

In light of these facts, it was reasonable for defendants to conduct an investigation to protect its employees from the threat of identity theft and to turn the findings of their investigation over to the Philadelphia Police Department for further investigation. The actions of the police department and the court system add further credence to defendants' contention that their conduct was not outrageous to sustain a claim for intentional infliction of emotional distress.

It is also noteworthy to mention that while plaintiff nominally alleges that she suffers from permanent "nightmares, sleeplessness, nausea, vomiting, [and] headaches," she has previously admitted that she has never sought nor received medical treatment for her purported conditions, has never been hospitalized, nor required surgery and has not incurred any medical bills from the injuries as a result of defendants' conduct. Thus, plaintiff also lacks any evidence which would medically document her alleged physical symptoms for establishing bodily harm from defendants' actions.

Lastly, this court also found that plaintiff's negligent infliction of emotional distress claim is insufficient as a matter of law.

To recover damages for emotional distress, plaintiff must prove: 1) that the defendant was negligent, 2) the defendant's negligence placed the plaintiff in danger

of physical impact, 3) the plaintiff suffered emotional distress as a result of the defendant's conduct, and 4) physical injury or physical impact must be present in order to recover. Pa. SSJI (Civ) 3.23, *Simmons v. Pacor, Inc.*, 543 Pa. 664,674 A.2d 232,238 (1996).

The plaintiff's negligent infliction of emotional distress claim is premised on her theory that defendants failed to conduct a proper investigation of the November 2007 letter and improperly reported that plaintiff was the letter's author to the police.

Pennsylvania law does not permit recovery for the negligent reporting of information to law enforcement. In *Davis v. Equibank*, 603 A.2d 637 (Pa. Super. 1992), the Pennsylvania Superior Court considered whether the plaintiff could recover for "negligent identification" of him as a suspected bank robber. *Id.* at 641. The court declined to recognize such a cause of action because the "public interest in investigation of crime outweighs the recognition of a negligence." *Id.*

The Pennsylvania Supreme Court affirmed the holding in *Davis* in *Jaindl v. Mohr*, 541 Pa. 163, 168, 661 A.2d 1362, 1365 (1995), which is factually similar to the case sub judicie.

In *Jaindl*, plaintiff's employer contacted the Pennsylvania State Police with information about stolen funds and the results of an internal investigation, including the employer's suspicions about the probable perpetrator. *Id.* at 164-65,1363. The court concluded that plaintiff's employer was justified in conducting an investigation and relaying their suspicions about plaintiff to law enforcement. *Id.* at 168,1365. In this same case, the

Superior Court refused to recognize a cause of action for negligent identification. *Id.* at 167,1364.

According to *Jaindl* and *Davis*, plaintiff's claim cannot be maintained. Regardless of whether the claim is for negligence, negligent identification, negligent procurement of criminal proceedings, or negligent infliction of emotion distress, the mere allegation of negligent reporting of information to police regarding a potential criminal suspect is not a recognized claim under Pennsylvania law. Accordingly, plaintiff's negligent infliction of emotional distress claim is legally incompetent.

## CONCLUSION

For the foregoing reasons, this court respectfully requests that its decision to grant defendants, Albert Einstein Medical Center, Albert Einstein Healthcare Network, Barry Freedman, James McCafferty, Russell Jones, and Christopher Brown's (collectively, "defendants") preliminary objections to the complaint of Stephanie Forman be affirmed.