MESSANO, P.J.A.D.
*217 *206 Plaintiff Dwight Morris appeals from the Law Division's January 6, 2017 order granting summary judgment to defendant TD Bank, N.A., and dismissing plaintiff's complaint asserting claims of negligence, false imprisonment, assault and violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49.[1] Plaintiff contends the judge erred in deciding as a matter of law that defendant did not breach the duty owed by a business owner to its customers to maintain reasonably safe premises or the duty to exercise reasonable care in the supervision of its employees. He also argues that the judge failed to apply proper summary judgment standards in considering his LAD claim by failing to view the motion evidence in a light most favorable to plaintiff. R. 4:46-2(c). Neither argument is persuasive. We affirm.[2]
I.
Contrary to plaintiff's assertion, the facts are essentially undisputed. Plaintiff, a fifty-nine-year-old African-American male, was wearing a striped collared shirt, black jacket, and grey baseball cap when he entered defendant's Union Township branch to make a withdrawal. Surveillance video shows a second African-American man, wearing white coveralls and a hardhat, entered the bank, stood near plaintiff, who thought the man was also completing a withdrawal slip, and approached the teller immediately ahead of plaintiff. This man handed the teller a slip, at which point the teller handed the man a stack of bills, and the man walked out of the bank. Plaintiff advanced to the counter; however, unbeknownst *207 to him, the other man had handed the teller a note saying, "[b]ig bills please this is a hold up."
While plaintiff was standing before the teller, another bank employee exited the break room, saw the note and discerned that it said something "in reference to a robbery." She walked back to her desk and called 9-1-1. Under the misimpression that plaintiff was the robber, she told police the robber, an African-American man, was still in the bank. While she was on the phone with the operator, two employees locked the bank's doors. Meanwhile, in this commotion, plaintiff took a seat in the bank's lobby area.
Critical to plaintiff's common law negligence claim was the employee's admitted departure from defendant's policy regarding procedures to be followed in the event of a robbery. The employee handbook provided: "FOLLOWING A ROBBERY only AFTER the Robber has left ... Call Police to Report Robbery."
Within four minutes of the 9-1-1 call, police arrived and defendant's employees unlocked the doors. Although plaintiff testified at deposition that police had "their guns pointed towards" him when they were "outside," the video shows their guns *218 were not drawn when they entered the bank. Police asked defendant which way the robber went and plaintiff responded, "[h]e went that way," pointing with his left arm.
Union Township Police Officer, Teon Freeman, testified at deposition that he never arrested plaintiff, but interviewed him as a witness. Plaintiff remained calm during the interview and provided information about the suspect, leading Freeman to believe plaintiff "knew he wasn't under arrest."
Plaintiff left the bank and returned home approximately ninety minutes after the incident. He recalled during his deposition testimony being "pretty upset about the situation" and "kind of emotional." In February 2015, six months after the robbery, plaintiff sought counseling from Patricia Delgado, a social worker, because he was experiencing "emotional distress," "fear[ ] of police" and inhibited sleep.
*208 Plaintiff attended three counseling sessions with Delgado between February 2015 and April 2015. Delgado testified her "diagnosis within a reasonable degree of social worker probability" was that plaintiff suffered from post-traumatic stress disorder (PTSD). Although conceding she was not an expert in PTSD, Delgado opined that plaintiff's condition was related to the robbery at TD Bank.
A.
At oral argument before the motion judge and before us, plaintiff submits defendant breached its duty to provide a reasonably safe environment for its customers, including protection against foreseeable criminal activity on and around the business' premises. Plaintiff argues the risk of criminal activity from a third party was foreseeable, noting defendant's policy specifically outlined the procedure to follow during a robbery. As we understand the argument, plaintiff contends defendant breached its duty because it failed to properly train its employees not to call 9-1-1 until the robber left the bank. According to plaintiff, the information provided in the 9-1-1 call led police to treat him as the "perpetrator" and point their weapons at him, resulting in plaintiff's claimed PTSD.
We "review[ ] de novo the ... entry of summary judgment[,]" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115, 85 A.3d 947 (2014), applying "the same standard as the trial court." Conley v. Guerrero, 228 N.J. 339, 346, 157 A.3d 416 (2017). Summary judgment is appropriate if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135, 165 A.3d 758 (2017). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c).
*209 If no genuine issue of material fact exists, the inquiry turns to "whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333, 64 A.3d 579 (App. Div. 2013) (citation omitted). "The trial court's conclusions of law and application of the law to the facts warrant no deference from a reviewing court." W.J.A. v. D.A., 210 N.J. 229, 238, 43 A.3d 1148 (2012) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ).
To sustain a negligence claim, plaintiff must prove: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51, 110 A.3d 52 (2015) (quoting *219 Polzo v. Cty. of Essex, 196 N.J. 569, 584, 960 A.2d 375 (2008) ). "[W]hether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide." Robinson v. Vivirito, 217 N.J. 199, 208, 86 A.3d 119 (2014). "[W]hether the duty was breached is a question of fact." Jerkins v. Anderson, 191 N.J. 285, 305, 922 A.2d 1279 (2007) (citing Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 56, 650 A.2d 376 (App. Div. 1994) ).
The duty an owner or occupier of land owes to others depends on the status of the injured party, i.e., "that of a business invitee, licensee, or trespasser." Estate of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 316, 69 A.3d 1247 (2013) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433, 625 A.2d 1110 (1993) ). While "business premises owners[ ] are not generally responsible for the criminal acts of others[,]" there may be exceptions "based on an analysis of whether the premises owner exercised reasonable care under the circumstances." Id. at 318, 69 A.3d 1247.
In Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 507, 514, 694 A.2d 1017 (1997), the Court adopted a "totality of the circumstances" analysis when considering an owner's liability for third party criminal conduct on its premises. This standard encompasses considerations of fairness in imposing a duty, foreseeability *210 of the third party conduct, and "whether the premises owner exercised reasonable care under the circumstances." Desir, 214 N.J. at 318, 69 A.3d 1247.
Here, plaintiff's claimed injury did not result from defendant's breach of a duty to maintain safe premises and protect plaintiff from the criminal conduct of another. Rather, plaintiff argues defendant's employee's breach of internal policies give rise to actionable negligence. However, we have held that "[a] defendant's internal policies-standing alone-cannot demonstrate [an] applicable standard of care." Cast Art Industries, LLC v. KPMG LLP, 416 N.J. Super. 76, 106, 3 A.3d 562 (App. Div. 2010).
More importantly, the alleged violation of the bank's policy cannot be an actionable breach of defendant's duty under the circumstances of this case. That is so because the evidence is undisputed-the 9-1-1 call was made after the robber left the bank. As a result, plaintiff's assertion that defendant's violation of its policies or its failure to adequately train its employees in those policies was actionable negligence must fail as a matter of law because there was no breach of the duty, if indeed one existed.
Plaintiff's claim, as Judge Ciarrocca explained in his comprehensive written decision, essentially seeks to impose liability for "negligent misidentification." Our courts have never recognized such a cause of action. Indeed, in other contexts, we have recognized a strong public policy in support of citizen cooperation with law enforcement, even when that cooperation leads to unexpected consequences. See, e.g., Bayer v. Twp. of Union, 414 N.J. Super. 238, 247-48, 997 A.2d 1118 (App. Div. 2010) (affirming the dismissal of the plaintiff's § 1983 claim where the plaintiff "was arrested for a bank robbery he did not commit, based on a bank teller's misidentification of him ... shortly after the crime"); Potter v. Vill. Bank of N.J., 225 N.J. Super. 547, 560, 543 A.2d 80 (App. Div. 1988) (observing "few people would cooperate with law enforcement officials if the price they must pay is retaliatory discharge from employment[, which] ... would have a chilling effect on criminal investigations and law enforcement").
*211 Instead, we have found a potential breach of the duty owed by businesses to their customers when they have failed to summon police. See, e.g., *220 Ventresco v. Gokvlesh Convenience, Inc., 318 N.J. Super. 473, 475-76, 723 A.2d 1250 (App. Div. 1999) (reversing summary judgment where the plaintiff asked store employee to call police after witnessing a fracas in the store parking lot, but the employee did not respond, and plaintiff was assaulted when he returned to the parking lot); Cassanello v. Luddy, 302 N.J. Super. 267, 273-74, 695 A.2d 325 (App. Div. 1997) (holding a jury could find a tavern breached its duty when the plaintiff was attacked by other patrons and the defendant refused to call police); Dubak v. Burdette Tomlin Memorial Hosp., 233 N.J. Super. 441, 458, 559 A.2d 424 (App. Div. 1989) (holding "under certain circumstances, a tavern owner is duty-bound to summon the police when it is reasonably foreseeable a patron may otherwise be harmed by the criminal acts of another").
Other jurisdictions have considered and rejected the imposition of tort liability under circumstances more compelling than those presented here. In Davis v. Equibank, 412 Pa.Super. 390, 603 A.2d 637, 638 (1992), following a robbery, a bank teller was shown a series of photographs by the police and wrongly identified the plaintiff as the perpetrator, causing plaintiff's arrest and incarceration. Thereafter, the plaintiff filed a negligence claim against the teller and the bank. Ibid.
The court found public policy precluded such a claim, noting that
[w]ith regard to the provision of information to law enforcement authorities, it is generally recognized that to allow recovery where an individual's provision of incorrect or mistaken information results in the arrest of another would have a substantial chilling effect upon the willingness of citizens to come forward with information relevant to criminal investigations.
[ Ibid. ]
The court held "the public interest in investigation of crime outweighs the recognition of a negligence action for negligent identification of a suspect." Id. at 641 (emphasis added); see also Jaindl v. Mohr, 541 Pa. 163, 661 A.2d 1362, 1364 (1995) (finding the *212 "reasoning of the Superior Court in Davis [v. Equibank ] to be sound, and join[ing] the ranks of other jurisdictions who have ... refused to recognize a cause of action for negligent identification").
Other jurisdictions have also refused to recognize a cause of action for negligent identification/misidentification. See, e.g., Campbell v. City of San Antonio, 43 F.3d 973, 979 (5th Cir. 1995) ("[W]e are unaware of[ ] any Texas authority holding that [the plaintiff] has a cause of action ... for ... a merely negligent misidentification."); Jones v. Autry, 105 F.Supp.2d 559, 561-62 (S.D. Miss. 2000) (citations omitted) (noting "the law allows a wide latitude for honest action on the part of the citizen who purports to assist public officials" and holding "there is no cognizable cause of action for negligent identification"); Manis v. Miller, 327 So.2d 117, 118 (Fla. Dist. Ct. App. 1976) (declining to impose "liability for false imprisonment upon a witness making an honest, good faith mistake in identifying a criminal suspect where the identification contributes to arrest and prosecution of the suspect"); Foley v. University of Dayton, 150 Ohio St.3d 252, 81 N.E.3d 398, 401-02 (2016) (citations omitted) (noting "[p]ublic policy favors the exposure of crime[,]" and holding "Ohio does not recognize the tort of negligent misidentification"); Shires v. Cobb, 271 Or. 769, 534 P.2d 188, 189 (1975) (declining to recognize a cause of action for negligent misidentification on public policy grounds); see also Restatement (Second) of Torts § 653 cmt. g (Am. Law Inst. 1977) (noting "[t]he exercise of [a police] officer's discretion makes the initiation of ... prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings").
*221 As a court of intermediate jurisdiction, we "normally defer to the Supreme Court with respect to the creation of a new cause of action." Riley v. Keenan, 406 N.J. Super. 281, 297, 967 A.2d 868 (App. Div. 2009). In this case, we refuse to recognize a new cause of action for negligent misidentification that is inconsistent *213 with our State's strong public policy encouraging citizen cooperation with law enforcement officials in the investigation of criminal activity. We affirm the grant of summary judgment dismissing plaintiff's negligence cause of action.
B.
Plaintiff contends that because he was the only African-American customer in the bank at the time, defendant's employee assumed he was the robber. His misidentification, therefore, evidences defendant's racial animus because the only "common denominator" between plaintiff and the robber was their race. The argument lacks sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).
Undoubtedly, the LAD provides a cause of action for discrimination based upon race in any "place of public accommodation." N.J.S.A. 10:5-12(f) ; Turner v. Wong, 363 N.J. Super. 186, 212, 832 A.2d 340 (App. Div. 2003). However, there is nothing in the record, except plaintiff's supposition that the bank's employee was racially motivated, that supports his LAD claim. The assumption that the man standing in front of the teller, who had the robber's note on her keyboard at the time, was the robber was entirely logical. No reasonable fact finder could conclude otherwise.
Affirmed.

In a second order, the judge entered summary judgment in favor of defendant Township of Union's Police Department. Plaintiff has not appealed from that order.

Plaintiff makes no argument regarding the other counts in his complaint for false imprisonment and assault. An issue not briefed is deemed waived on appeal. N.J. Dept. of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n. 2, 105 A.3d 1145 (App. Div. 2015).