**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1513-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MOHAMED B. EL-LAISY,

    Defendant-Appellant.

_____

Submitted June 5, 2019 – Decided July 16, 2019

Before Judges Koblitz and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 13-05-1502.

Robert Marc Gamburg (Gamburg and Benedetto), attorney for appellant.

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Dylan P. Thompson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from his October 20, 2017 convictions of third-degree assault against a police officer, N.J.S.A. 2C:12-1(b)(5)(a); two counts of fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1(a) and(b); and two counts of third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a). He received an aggregate sentence of probation for two years. The jury convicted defendant of assaulting an officer in a September 2011 casino night-club brawl, rejecting his claim that he acted in self-defense after that officer attacked him.

After the verdict, defense counsel learned the State had not disclosed that the officer remained the subject of two ongoing investigations by the police department's Internal Affairs Unit (IA) for excessive force, including the incident involving defendant. The State also did not reveal that the Federal Bureau of Investigation (FBI) had initiated an investigation into the officer, or that the officer had asserted his right to remain silent over 1400 times when questioned in a federal civil suit brought by another citizen, D.C.[1] Defendant argues that these non-disclosures, as well as the officer's false statement that IA had "cleared" him of all allegations, violated Brady v. Maryland, 373 U.S. 83 (1963). We agree that the failure to disclose the ongoing investigations into the

---

[1] We use initials to protect his privacy.

officer's conduct and his testimony in the civil suit violated <u>Brady</u> and reverse. We reject defendant's further argument that he was denied a speedy trial.

After his December 2011 indictment, and a subsequent May 2013 superseding indictment,[2] which charged him with assaulting two officers, defendant moved for production of Atlantic City Police Department (ACPD) IA materials. After in camera review, the motion court[3] allowed defendant to cross-examine the officer about twenty-two IA investigations into the officer's conduct. The motion court found that eight of the complaints involved suspects charged with conduct similar to the charges against defendant. It also found that in the officer's report of those eight incidents he quoted the suspects as using near identical language to statements he claimed defendant made. The motion court also allowed defendant to cross-examine the officer regarding these eight incidents.

The court held, "as a matter of reciprocal fairness, the fact that [the officer] was effectively 'cleared' in all [twenty-two] excessive force complaints by the ACPD may be addressed by either (or both) parties in the course of cross or redirect examination (or both)."

---

[2] He was indicted with a co-defendant who is not involved in this appeal.

[3] The judge who heard the pre-trial motion did not try the case.

At trial, both officers and casino security personnel testified, describing their initial encounter and subsequent struggle with defendant, and defendant hurling verbal abuse. Defendant also testified, asserting he acted in self-defense. Both sides played portions of surveillance footage from the casino club. Because the footage was grainy and not consistently clear, counsel asked the witnesses to explain the action and point out their presence at different times. While the video showed defendant resisting and struggling with the officers, it did not capture the first moments of the altercation; thus, it could not definitively show who instigated the fight. The jury convicted defendant of all charges relating to the officer who had received citizen complaints, but acquitted defendant of assaulting the other officer.

Defendant raises the following issues on appeal:

> POINT I: THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON VIOLATIONS OF BRADY, GIGLIO[4] AND AFTER DISCOVERED EVIDENCE.

> POINT II: THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S SPEEDY TRIAL MOTION AND ALLOWING OVER FIVE YEARS TO ELAPSE FORM THE DATE OF OFFENSE UNTIL TRIAL.

---

4 Giglio v. United States, 405 U.S. 150 (1972).

A. LENGTH OF DELAY.

B. REASON FOR DELAY.

C. ASSERTION OF RIGHT.

D. PREJUDICE TO DEFENDANT.

### I. Brady Violation.

After the verdict but before sentencing, defense counsel received IA investigation documents from another attorney. The materials included an April 2016 affidavit by ACPD Chief Henry White, in connection with a federal civil suit against the officer and the ACPD by D.C. White certified that IA began an investigation into the officer relating to D.C.'s allegation of excessive force, but suspended the investigation:

> 3. After assigning the matter with an [IA] Case Number, the Atlantic County Prosecutor's Office [ACPO] was notified of the [IA] Complaint, and the [ACPO] took possession of the investigation prior to any substantive investigative work being performed, other than document review, by the Atlantic City [IA].
>
> 4. The [ACPO] has completed their investigation and the Atlantic City [IA] is currently in possession of the [IA] file; however, no investigation has commenced on the part of the [ACPD] or the Atlantic City [IA].
>
> 5. The Atlantic City [IA] has elected not to follow up with an internal affairs investigation into the matter based upon the fact the we have reason to believe that the matter is currently under investigation by the [FBI],

5

and as such, we will not begin the internal affairs investigation unless and until we receive written confirmation from the [FBI] that their investigation has concluded; and, upon advice and the recommendation of the New Jersey State Association of Chiefs of Police, . . . the Atlantic City [IA] has been hesitant to pursue an internal affairs investigation into any matters that are associated with pending civil litigation.

Because defendant, like D.C., sued the officer for excessive force, defendant reasoned the IA investigation relating to his complaint against the officer was also suspended pending the civil litigation

Defendant also received a copy of ACPD Captain Jerry Barnhart's certification, also for D.C.'s civil suit, stating that IA had not concluded its investigation into either D.C.'s or defendant's excessive-force complaint. Barnhart affirmed that defendant's complaint

remains as an open IA case and Sgt. Johnson has indicated he will prioritize the matter along with two other internal affairs matters he has been required to prioritize and, as such, is working several cases including [El-Laisy's] simultaneously and moving them along as expeditiously as he is able.

Barnhart noted that defendant "remains pending criminal trial which has been postponed several times with trial presently scheduled, to my understanding, this month (September 2016)." He certified: "Police Chief Henry White suspended

the [D.C.] investigation because of pending litigation. This decision was based on a recommendation from the State Chiefs' Association."

Defendant also received the officer's December 2015 deposition for D.C.'s federal civil suit, in which the officer answered virtually every question by asserting his Fifth Amendment right to remain silent. According to defendant, during the 253-page deposition, the officer invoked the Fifth Amendment more than 1400 times.

Defendant moved for a new trial, claiming the State violated his right to exculpatory evidence by not disclosing these materials and that the documents constituted after-discovered evidence requiring a new trial.[5] The trial court denied defendant's post-trial motion. Mistakenly analyzing the situation under the Rule 3:20-1 test for vacating a verdict that is against the weight of the evidence, the court concluded that, after giving "due regard to the opportunity of the jury to pass upon the credibility of the witnesses," defendant could not "clearly and convincingly" demonstrate "a manifest denial of justice."

On appeal, defendant renews his argument that the State violated Brady by not disclosing that the IA investigations relating to both defendant and D.C.

---

[5] On appeal, defendant does not brief his argument concerning after-discovered evidence so we deem that issue abandoned. Morris v. T.D. Bank, 454 N.J. Super. 203, 206 n.2 (App. Div. 2018).

remained ongoing; that the officer was the subject of an FBI investigation; and that the officer had asserted the Fifth Amendment numerous times, including in reference to defendant's incident. Defendant also argues that the State improperly allowed the officer to testify he had been "effectively cleared" in all twenty-two cases.

Whether non-disclosure of evidence violates Brady is a mixed question of law and fact, where the trial court's decision concerning the materiality of the evidence merits deference. State v. Marshall, 148 N.J. 89, 185-86 (1997). We do not defer, however, where the trial court did not analyze the claim under the correct legal standard. Id. at 185. Relying in great part on the motion court's pre-trial decision, the trial court mistakenly treated defendant's motion as a claim that the verdict was against the weight of the evidence, requiring deference to the credibility determinations of the jury and clear and convincing evidence of a manifest denial of justice. See R. 3:20-1. To be successful in a Brady claim, however, the defendant must show: (1) the State suppressed evidence (2) that was favorable to the defendant and (3) material to the verdict. State v. Nelson, 155 N.J. 487, 497 (1998). Even an inadvertent failure to disclose evidence may violate Brady. State v. Brown, 236 N.J. 497, 519 (2019).

The State is deemed to have suppressed evidence when it had either actual or imputed knowledge of the materials. Nelson, 155 N.J. at 498. Knowledge is attributed to the trial prosecutor when the evidence is in the possession of "the prosecutor's entire office . . . , as well as law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture." Id. at 499 (quoting Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 824 (10th Cir. 1995)) (alteration in original).

Chief White's and Captain Barnhart's statements, which they made a few months before defendant's trial, demonstrate that the ACPD knew the IA investigations into both defendant's and D.C.'s complaints remained ongoing. Chief White's deposition testimony revealed the police knew that the officer had exercised his right against self-incrimination, and that the FBI had initiated an investigation into the officer. Because ACPD leadership knew of this undisclosed information, their knowledge is imputed to the prosecutor. Therefore, defendant has met the first Brady prong.

The undisclosed evidence is favorable to defendant, as required by the second Brady prong, because it undermines the officer's credibility and raises doubt as to whether defendant was the initial aggressor. That IA investigations into defendant's and D.C.'s incidents remained open would have contradicted

9

the officer's assertion, sanctioned by the motion court, that he had been cleared of all twenty-two complaints.  Additionally, knowledge of an FBI investigation into the officer's conduct may have undercut his credibility with the jury.

As for the third, materiality prong, the applicable standard depends on the undisclosed evidence.  State v. Carter, 91 N.J. 86, 112 (1982).  Where the prosecution knowingly presented perjured testimony, "any reasonable likelihood that the false testimony could have affected the judgment of the jury" will warrant reversal.  Ibid. (quoting United States v. Agurs, 427 U.S. 97, 103-04 (1976)).  This heightened standard stems from the principle that the State may not obtain a conviction through falsified or tainted evidence or testimony. See State v. Gookins, 135 N.J. 42, 49-51 (1994).

Where the violation consisted of a failure to disclose favorable evidence (whether specifically requested or not), the court must reverse if the non-disclosure precluded "a verdict worthy of confidence."  Brown, 236 N.J. at 520 (quoting Nelson, 155 N.J. at 500); Marshall, 148 N.J. at 156.  Under this standard, "evidence is material if there is a 'reasonable probability' that timely production of the withheld evidence would have led to a different result at trial." Brown, 236 N.J. at 520 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  "Reasonable probability" means "a probability sufficient to undermine

confidence in the outcome." Nelson, 155 N.J. at 500 (quoting Bagley, 473 U.S. at 682).

Materiality turns on "the importance of the [evidence] and the strength of the State's case against [the] defendant as a whole." Marshall, 123 N.J. at 200. The significance depends on "the context of the entire record." Brown, 236 N.J. at 518-19 (quoting Marshall, 123 N.J. at 199-200). The context includes "the timing of disclosure of the withheld evidence, the relevance of the suppressed evidence, and the withheld evidence's admissibility." Id. at 519.

The State presented false testimony and failed to disclose pertinent impeachment evidence. With the motion court's permission, the officer responded "yes" to defense counsel's question if IA had "cleared" him in all twenty-two cases. Chief White's affidavit and Captain Barnhart's certification demonstrate that, in fact, both D.C. and defendant's investigations remained ongoing. Thus, the officer's statement that he had been "cleared" of all twenty-two allegations was not accurate. We must reverse if it is reasonably likely that the false testimony could have affected the jury's judgment. Carter, 91 N.J. at 112.

The officer, as the prime actor and claimed victim in this incident, was the State's most significant witness. Evidence of pending charges against or an

ongoing investigation into a witness is admissible "to show that the State may have a 'hold' of some kind over [the] witness." State v. Parsons, 341 N.J. Super. 448, 458-59 (App. Div. 2001) (holding an ongoing criminal investigation into an officer's misconduct was material under Brady to the defendant's decision to enter a guilty plea). The inconclusiveness of the surveillance footage, together with the officer's history of complaints of excessive force, weakened the State's case, requiring it to persuade the jury of the officer's credibility and character. Whether he remained the focus of investigations for violence—especially against defendant himself—went to the heart of the trial and had the capacity to influence the jury's verdict.

The officer's assertion of his Fifth Amendment privilege numerous times, and the continuing FBI investigation, if known prior to trial, could also have produced a different verdict, considering the significance and admissibility of the information. See Brown, 236 N.J. at 520. New Jersey case law has recognized a constitutional requirement to disclose any information that may reasonably lead to additional evidence discrediting the State's witnesses or contradicting its narrative. See State v. Williams, 403 N.J. Super. 39, 46-47 (App. Div. 2008) (concluding that the State must disclose inadmissible evidence that could lead to related admissible evidence). Here, evidence of a federal

investigation into the officer would have been admissible to impeach the officer. The nondisclosure of the officer's many invocations of his right to remain silent, the continuing investigations, and his inaccurate representation that he was instead "cleared" of all allegations requires reversal in these circumstances, where the verdict rested in large part on the credibility of the officer.

## II. Speedy Trial.

Defendant also argues for reversal of his conviction due to violation of his right to a speedy trial. A defendant's right to a speedy trial under the United States and New Jersey constitutions, though fundamental, is "necessarily relative." Barker v. Wingo, 407 U.S. 514, 522 (1972) (quoting Beavers v. Haubert, 198 U.S. 77, 87 (1905)); State v. Cahill, 213 N.J. 253, 268 (2013). Whether the State violated this right turns primarily on four factors: (a) the length of delay; (b) reason for the delay; (c) the defendant's assertion of the right; and (d) the resultant prejudice to the defendant. Cahill, 213 N.J. at 264 (citing Barker, 407 U.S. at 530). A court must balance all the factors in assessing whether the right was violated. Ibid. Some delays, such as those exceeding one year, are "presumptively prejudicial" and trigger the court's consideration of the remaining factors. Ibid. (quoting Barker, 407 U.S. at 530).

13

Not all reasons for a delay weigh equally against the State. For example, while a deliberate delay to hamstring the defense will weigh heavily in favor of finding a violation, mere negligence by the State or an outsized caseload will weigh less heavily—although the State remains ultimately responsible to move cases along in a timely manner. Id. at 266. While a defendant has no duty to assert his right to a speedy trial, asserting the right "in the face of continuing delays is a factor entitled to strong weight when determining whether the state has violated the right." Ibid. The prejudice that a defendant suffers from a delayed trial may include the psychological stress of a pending charge, possible "impairment of the defense" (such as due to a witness's absence or inability to recall), or "oppressive incarceration." Id. at 266.

Defendant's trial began September 21, 2016, three years and four months after the May 28, 2013 superseding indictment, and five years, eight days after the brawl. Because the delay ran longer than one year, it triggers consideration of the other factors. After careful review of the record, we are satisfied that the delay stemmed from numerous factors, frequently caused by defendant, his co-defendant or their counsel. The complicated legal and factual issues and numerous motions also created a lengthy process.

 A-1513-17T1

Defendant moved for dismissal claiming violation of his right to a speedy trial for the first time in February 2016, about six months before trial began. His delay in asserting the right suggests the deprivation was not serious, although he claims, without documentation, that an important defense witness moved out of the country.

Together, the Barker factors do not support defendant's claim of a violation of his right to a speedy trial. Both the defense and the State had a part in causing the delay, and the State-caused postponements stemmed from neutral factors, not bad faith. Defendant cannot demonstrate any substantial prejudice the delay occasioned him. He was not incarcerated pending trial. We therefore do not reverse based on speedy trial grounds.

Because defendant did not receive important information from the State concerning investigations still pending against a crucial State witness, however, we are constrained to reverse.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1513-17T1