**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3305-24

AKHILESH PARASHER,

    Plaintiff-Appellant,

v.

MAYA ETVIR SHARMA,
PREFERRED MUTUAL
INSURANCE COMPANY
(MED PAY),

    Defendants-Respondents.

_____

Argued April 29, 2026 – Decided May 26, 2026

Before Judges Currier and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2277-23.

Kris A. Krause argued the cause for appellant (Fredson Statmore Bitterman LLC, attorneys; Kris A. Krause, on the briefs).

William S. Bloom argued the cause for respondents (Methfessel & Werbel, attorneys; William S. Bloom, on the brief).

PER CURIAM

Plaintiff Akhilesh Parasher appeals from an order granting summary judgment to defendants Maya Etvir Sharma and Preferred Mutual Insurance Company in this personal injury case. Sharma was plaintiff's elderly mother, who suffered from dementia at the time of these events and has since passed away. The lawsuit arose from a fall suffered by plaintiff while he visited Sharma on Mother's Day and helped to perform chores and run errands. Specifically, plaintiff tripped on a three-step outdoor staircase leading from the back door.

After careful review, we affirm in part, vacate in part, and remand. We conclude the trial court correctly found plaintiff was a social guest rather than a business invitee. Moreover, regardless of plaintiff's status, Sharma did not breach any duty owed to plaintiff because the alleged danger presented by the staircase was obvious to plaintiff, who, in the year before the fall, had used the staircase often when he visited his mother, which was nearly every day. And, earlier in his life, plaintiff had lived in the house with Sharma for a period of two years. Therefore, any risk posed by the staircase would have been obvious to plaintiff.

Finally, we vacate the portion of the order granting summary judgment to Preferred Mutual Insurance Company. Preferred Mutual Insurance Company

2

did not move for summary judgment with respect to that count, and the court never addressed the substance of the claim in its opinion.

## I.

On May 8, 2022, Mother's Day, plaintiff fell down the three-step outside staircase connected to the back door of his mother's house. Sharma had lived in the house for over fifty years. After his father died, plaintiff lived in the house with his mother for two years. Since 2015, Sharma had been suffering from dementia. It is not clear how old Sharma was at the time of the accident. Her other son, Hirdesh Parasher, testified she was "around 85" as of the date of his deposition, two years after the accident. Plaintiff, on the other hand, stated she was "about 75." She has since passed away.[1]

In the year before the fall, plaintiff visited his mother at her house "almost every day." During these visits, plaintiff would take his mother grocery shopping and drive her to run errands. At his deposition, plaintiff first testified he had never entered the house through the back door. But plaintiff then stated, while unloading groceries, he and his mother would enter the house through the back door. In the year before the fall, plaintiff did not notice any defects in the

---

[1] It is not clear from the record when Sharma passed away, or if any party made a motion to substitute the estate as the appropriate party. See R. 4:34-1.

A-3305-24

steps leading up to the back door. Plaintiff stated his mother's dementia worsened, and as of 2020 she did not remember his name when he called her on the phone.[2] A caregiver lived with Sharma in the three years before the accident.

On the day of the accident, Sharma called plaintiff: "She call my house. She said come over. Can you come over for the Mother's Day? That's what happened that time." Plaintiff claimed his mother "wanted just [to] have [a] little fun, you know, for the family fun." He arrived at approximately 11:30 a.m. and entered through the front door. According to plaintiff, no one else was in the house for the duration of his visit. Plaintiff helped with house cleaning for approximately thirty minutes. He then took his mother to the bank and ShopRite to buy groceries. When they returned, they carried the groceries in through the back door without incident.

After putting away the groceries, plaintiff exited the house using the back door. Plaintiff navigated the first step without issue but fell backwards once he reached the second step. When asked if he tried to grab the railing as he was falling, plaintiff said: "No. That time is no railing. Just the steps."

---

[2] Hirdesh was granted power of attorney over Sharma, according to his deposition.

A-3305-24

A three-step stone staircase leads up to the back door of the house. There are metal handrails on both sides of the highest step, but on one side the railing is dislodged from its anchor point. The lower two steps do not have handrails. Plaintiff's liability expert concluded the staircase was a dangerous condition because of "the lack of dimensional uniformity, a defective guardrail and handrailing system and the absence [of] proper visual cues."

Plaintiff filed a two-count complaint against defendants in Essex County. In count one, plaintiff alleged negligence against Sharma relating to the condition of her property. In count two, plaintiff made a claim for compensation pursuant to an insurance policy issued by Preferred Mutual Insurance Company to Sharma. Defendants answered and moved pursuant to Rule 4:3-3 to transfer venue to Mercer County, where Sharma's house was located and the underlying incident occurred. The court granted this motion and transferred the case to Mercer County. Following discovery, Sharma moved for summary judgment. On June 9, 2025, the trial court granted summary judgment and dismissed the complaint. This appeal followed.

II.

We review a trial court's grant of a motion for summary judgment de novo. Christakos v. Boyadjis, 262 N.J. 447, 462 (2026). Pursuant to Rule 4:46-2(c), a motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." We therefore consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." In re Est. of Jones, 259 N.J. 584, 594 (2025) (quoting Padilla v. Young Il An, 257 N.J. 540, 547 (2024)).

The trial court concluded plaintiff was a social guest, not a business invitee. On appeal, plaintiff argues he should properly be classified as an invitee because his primary purpose in visiting Sharma on the day of the accident was to "confer[] essential household benefits," specifically, cleaning and running errands. Defendant argues plaintiff was a social guest based on the uncontroverted fact Sharma had asked him to come over that day for the purpose of "family fun." We agree.

"The duty an owner or occupier of land owes to others depends on the status of the injured party, i.e., 'that of a business invitee, [social guest], or trespasser.'" Morris v. T.D. Bank, 454 N.J. Super. 203, 209 (App. Div. 2018) (quoting Est. of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 316 (2013)).

A business invitee is "invited on the premises for purposes of the owner that often are commercial or business related." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993). The landowner owes the business invitee "a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered." Id. at 434. This duty requires "conduct[ing] a reasonable inspection to discover latent dangerous conditions." Ibid.

"A lesser degree of care is owed to a social guest or licensee, whose purposes for being on the land may be personal as well as for the owner's benefit." Id. at 433. An owner is liable to a licensee or social guest when

> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

> (c) the licensees do not know or have reason to know of the condition and the risk involved.
>
> [Parks v. Rogers, 176 N.J. 491, 499 (2003) (alterations omitted) (quoting Restatement (Second) of Torts § 342 (A.L.I. 1965)).]

Finally, the owner owes "a minimal degree of care to a trespasser, who has no privilege to be on the land." Hopkins, 132 N.J. at 433. The plaintiff's status "is determined by the circumstance that brought him or her to the property." D'Alessandro v. Hartzel, 422 N.J. Super. 575, 579 (App. Div. 2011). The duty owed to the plaintiff and the scope of the duty are determined by the court as questions of law. Morris, 454 N.J. Super. at 209.

Although these inquiries are necessarily fact-specific, we do not find it unusual for family members, particularly adult children visiting their aging parents, to provide assistance during their visits, run errands, or help with chores. These ancillary benefits conferred upon their family members during the visit do not serve to convert a social guest into a business invitee. Generally these family members retain the status of social guest, regardless of the amount of work they perform, or the benefit conferred upon the family member.

The trial court correctly reasoned the facts of this case were more analogous to Pearlstein v. Leeds, 52 N.J. Super. 450 (App. Div. 1958), than Benedict v. Podwats, 109 N.J. Super. 402, 408 (App. Div. 1970), aff'd o.b., 57

8

N.J. 219 (per curiam). In <u>Pearlstein</u>, we held a social guest who also assisted the host with chores was not an invitee. 52 N.J. Super. at 458-59. The plaintiff was invited by the defendant, her cousin, to help prepare the defendant's home for a party being hosted the next day. <u>Id.</u> at 453. Upon arriving, the plaintiff "went shopping with [the defendant], and that evening made coleslaw and potato salad for the next day's event." <u>Ibid.</u> On the day of the party, the plaintiff fell down some newly waxed stairs. <u>Id.</u> at 453-54. We held the plaintiff was a social guest, despite performing chores for the defendant's benefit:

> It has generally been held the [social] guest remains such despite the performance of services beneficial to the host in the course of the visit. . . . The rationale appears to be that, as in our case, the main purpose for the presence of the plaintiff on the premises is social and not to render services. The nature of the relationship should be governed throughout by that purpose and not by the fact that the guest may during a small portion of the stay assist in preparing food for a meal or perform some other minor chore of benefit to the hostess at the latter's request. The facts here, considered most favorably to plaintiff, demonstrate as matter of law that she was a social guest and nothing more.
>
> [<u>Id.</u> at 458-59 (citations omitted).]

In contrast, in <u>Benedict</u>, the plaintiff was "not invited for the purpose of engaging in some social gathering, but <u>solely</u> to perform chores for her homeowner sister, thereby conferring a benefit upon the invitor." 109 N.J.

Super. at 408 (emphasis added). Specifically, the plaintiff came to the home to create a floral arrangement for her sister, who had also asked the plaintiff "to do anything [the plaintiff would] see to be done" around the house. Id. at 405. Thus, the plaintiff also "straightened up, did some dusting, [and] put out some laundry" to dry on the patio. Ibid. While retrieving the laundry, the plaintiff fell down some stairs. Id. at 405-06.

We concluded the plaintiff was a business invitee and distinguished Pearlstein because the visit lacked any social element, given the plaintiff was invited "solely to perform chores." Id. at 408. We also found significant the fact that the plaintiff's sister was not at home for the duration of the plaintiff's visit. Id. at 409 ("To hold that the visit of one sister to the home of another sister solely to work there, during the absence from the home of the invitor-sister, makes the visitor a 'social guest,' would enlarge the meaning of the word 'social' beyond its normal connotation.").

In this case, plaintiff was asked to come to Sharma's house for a social purpose. According to plaintiff's own uncontradicted deposition testimony, Sharma called him and said, "Can you come over for the Mother's Day?" because she "wanted just [to] have [a] little fun, you know, for the family fun." While plaintiff did help clean and run errands, those facts do not convert him into an

invitee as he did not visit his mother <u>solely</u> to do those chores. See <u>Benedict</u> 109 N.J. Super. at 408. He also did not do the chores by himself, while Sharma was out of the house, which would have eliminated the possibility of social interaction. <u>See</u> <u>id.</u> at 409. Instead, this was a visit by a son to his ailing mother on Mother's Day, involving both social interaction and the concurrent performance of household chores. It is well settled such a visitor is considered a social guest rather than an invitee. <u>See</u> <u>Pearlstein</u>, 52 N.J. Super. at 458-59; <u>see also</u> <u>Hopkins</u>, 132 N.J. at 433 (noting a social guest's "purposes for being on the land may be personal as well as for the owner's benefit.").

Additionally, regardless of whether plaintiff is a business invitee or social guest, Sharma is not liable as a matter of law because the hazard posed by the staircase was obvious. The duty to a social guest "includes an obligation to warn of a known dangerous condition on the premises except when the guest is aware of the condition or by reasonable use of the facilities would observe it." <u>Tighe</u> <u>v. Peterson</u>, 175 N.J. 240, 241 (2002) (per curiam). Similarly, for business invitees, "[r]easonable care by the owner or occupier does not ordinarily require precautions or even warning against dangers which are apparent . . . but may subject the possessor to liability if the danger is known by the possessor or

should reasonably have been anticipated." Ridenour v. Bat Em Out, 309 N.J. Super. 634, 644 (App. Div. 1998).

According to plaintiff's brother's deposition, the staircase and metal handrails have been in place since his mother purchased the house. Plaintiff had lived in the house for two years. He also testified he would regularly use the stairs to carry in groceries in the year before the fall. The alleged defects in the stairs—"the lack of dimensional uniformity, a defective guardrail and handrailing system[,] and the absence proper visual cues"—were obvious to plaintiff. Therefore, Sharma is not liable as a matter of law. See also Endre v Arnold, 300 N.J. Super. 136, 143 (App. Div. 1997) (concluding host not liable to social guest for a fall down the stairs when the plaintiff "frequented defendant's home" and "had travelled the stairs fairly often," which meant "no reasonable fact finder could conclude that the decedent was unaware of those conditions.").

Finally, count two of plaintiff's complaint against Preferred Mutual Insurance Company, which concerned a policy issued to Sharma, was never addressed by the trial court. Preferred Mutual Insurance Company did not move for summary judgment on that count, and at oral argument before this court neither party disputed that the court's dismissal of count two was erroneous. We

12

therefore vacate the portion of the order granting summary judgment on count two.

Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division