**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3095-24

NICOLE WIMBISH,

    Plaintiff-Appellant,

v.

TD BANK and TD BANK, NA,

    Defendants-Respondents.

_____

Submitted February 5, 2026 – Decided June 4, 2026

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0865-23.

Matt Simon Law, attorneys for appellant (Matthew C. Simon, on the briefs).

Stradley Ronon Stevens & Young, LLP, attorneys for respondents (Andrew I. Hamelsky and Maxx M. Johnson, on the brief).

PER CURIAM

Plaintiff Nicole Wimbish appeals from a January 17, 2025 Law Division order granting summary judgment in favor of defendant TD Bank, NA, and an April 30, 2025 order denying reconsideration. We affirm.

I.

We deduce the following facts from the record. Plaintiff's son opened a TD Bank checking account in September 2020, but because he did not fund it, the account was subsequently closed for inactivity. He had a second TD Bank checking account, which was funded and active. In January 2021, plaintiff attempted to cash a check at one of defendant's drive-through bank branches. The check, which was endorsed to plaintiff in the amount of $2,500, was drawn on her son's closed account.[1]

When the teller looked up the account number on the check, it did not match the name indicated on the check. She then input the name printed on the check, and it matched the open account. Consistent with the bank's policy, the

_____

[1] Although the check is sometimes referenced in the record as a "starter" check, which only contains preprinted routing and account numbers, deposition testimony from defendant's employees clarified TD Bank ceased providing "starter" checks to customers. The check at issue contained preprinted information including the routing and account numbers, account holder's name and address, and check number.

A-3095-24

teller advised plaintiff she was unable to cash the check and could not return it to her because it was an invalid check.

Plaintiff then walked into the bank branch and insisted someone call the police, stating the bank employees needed to be arrested for withholding her money. At plaintiff's insistence, the branch assistant manager called the police, and officers responded.

The branch teller manager testified during her deposition one of the officers asked her whether the bank wanted to press charges and she replied, "no, we weren't even going to call you." She showed the officer the check and explained the account number did not match the name on the check.

The officer asked if it was a "bad check," and the teller manager said "yes, I can't do anything with it." She explained in her deposition the distinction between a "bad" check and a "fraudulent or fake" check: a bad check "means that there is something wrong with" the account or check, such as an inconsistency between the numeric and written dollar amount, or insufficient funds in the account to cash it; and a fraudulent check has "signatures and handwriting [that] don't match up with previous transactions or documentation," which indicates a forged document. She did not believe plaintiff's check was

3

fraudulent or forged, only that it was bad because it was written on a closed account.

Body-worn camera footage documented three responding officers discussing the matter amongst themselves, without any bank employee's involvement or input. After examining the check, one officer noted it was on "see-through" paper and not drawn on a valid account. He commented this was not a "situation[]" they "handle every . . . day," and after a brief discussion, the officers decided charges were warranted based on plaintiff's "passing" "a fake check," which they believed to be a "forgery."

Plaintiff was charged with third-degree forgery - false authentication of a writing, N.J.S.A. 2C:21-1A(2) (count one); and third-degree forgery - uttering a forged document, N.J.S.A. 2C:21-1A(3) (count two). The affidavit of probable cause supporting the charges stated:

> Upon arrival[,] units met with the male[2] and female in question as well as the . . . teller [manager]. After speaking with the . . . teller [manager,] . . . she stated that [plaintiff] . . . attempted to cash a counterfeit check for the amount of $2,500[]. [The teller manager] advised me that the name on the check ([plaintiff's son]) did have an account with the bank but stated the account number on the bottom of the check not only did not belong to [plaintiff's son,] but was not an active TD Bank account number. It should be noted the bank

---

[2] The record does not identify "the male" present with plaintiff.

A-3095-24

check also appeared counterfeit due to colors being off/blurred as well as the check being partially see through.

The charges were later dismissed and expunged from plaintiff's record.[3]

In January 2023, plaintiff filed a complaint against defendant alleging: she attempted to cash a valid check and was denied from doing so; she attempted to deposit a valid check and was denied from doing so; defendant's representatives called the police and advised them plaintiff attempted to cash a fake/fraudulent check; and the police arrested and charged plaintiff based on statements and documents provided by defendant's employees. She further contended defendant "admitted its mistake afterwards" because there were sufficient funds in the account but a clerical or computer error caused a mistake. She claimed defendant's negligence caused her "personal injuries, mental health injuries, embarrassment, pain and suffering, out-of-pocket expenses, and other damages."

The judge granted defendant's motion for summary judgment and dismissed the complaint. In an oral decision, the judge explained:

> Here, there is no evidence in the record demonstrating that the bank or any of the representatives of the bank determined that this was a

---

[3] The court entered a consent order permitting the release of expunged documents to the parties for the purposes of this litigation.

fraudulent or forged check. There's no evidence that the bank told the police or anyone else that the check was fraudulent or forged and the police prepared a report.

The narrative appears to be written under the assumption that . . . plaintiff attempted to cash a fraudulent check. There's other testimony in the record that indicates that the police thought that the check was fake. One of the officers did testify that if the bank had told him the check was a quote, "real check," and if he was aware that the account linked to the check was closed, he would not have brought the forgery charges against . . . plaintiff.

Because the complaint was "not really necessarily a model of clarity," the judge considered whether plaintiff was attempting to allege a malicious prosecution claim but found "no facts that would support a finding . . . defendant acted with any malice during this whole incident." A potential abuse of process claim also failed because there was "no evidence in the record of any actions by [defendant] that [defendant] performed or its representatives performed after . . . plaintiff was arrested."

The judge cited Morris v. T.D. Bank, 454 N.J. Super. 203 (App. Div. 2018), in which we declined to recognize a cause of action for negligent misidentification of the plaintiff as a bank robber, and Brunson v. Affinity Federal Credit Union, 199 N.J. 381 (2009), in which our Supreme Court rejected a cause of action for negligent private investigation of bank fraud. He noted

6

"these cases hold that it's against public policy in New Jersey to institute a claim for civil penalties where a civilian attempts to contact and assist law enforcement." Because the record reflected the decision to arrest plaintiff was made by the police, based on the facts presented to them at the time, the judge found there was no basis for liability to attach to defendant. Plaintiff's subsequent motion for reconsideration was denied for substantially the same reasons.

On appeal, plaintiff argues the motion judge inappropriately granted summary judgment to defendant as to its duty to her. She claims defendant "was in a position of power" over her and "negligently advised and/or implied to the police officers that the check was counterfeit," leading to her arrest. Plaintiff insists had defendant not "negligently misrepresented the facts and situation to the police officers," she would not have been charged. She further contends the judge's reliance on Morris is misplaced because that case concerned misidentification, "which is common knowledge that anyone can mistakenly provide" but this case revolves around defendant's "policies and procedures as well as internal TD Bank documents (the check) . . . within the unique knowledge of [defendant's] employees only."

A-3095-24

## II.

We review de novo a trial court's ruling on a motion for summary judgment, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The court must decide whether "there is [a] genuine issue as to any material fact" when the evidence is "viewed in the light most favorable to the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (first quoting R. 4:46-2(c); and then quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

To succeed on a claim of negligence, plaintiff must show proof of: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). "[W]hether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide." Robinson v. Vivirito, 217 N.J. 199, 208 (2014). "[W]hether the duty was breached is a question of fact." Jerkins ex. rel. Jerkins v. Anderson, 191 N.J. 285, 305 (2007).

Because they are dispositive of the issues on appeal, we briefly address the salient cases relied on by the motion judge. In Brunson, a fraud examiner with the defendant bank identified the plaintiff as the perpetrator of fraudulent bank withdrawals. 199 N.J. at 387-88. Before comparing photographs of the perpetrator to the plaintiff, the fraud examiner brought the case to police, which resulted in plaintiff being charged and thereafter indicted. Id. at 388-89. The trial court subsequently dismissed the indictment because "neither the physical description nor surveillance still photographs of the thief matched the [plaintiff]." Id. at 389.

The Court affirmed the dismissal of the plaintiff's resulting malicious prosecution claim because he could not show "the filing of the criminal case against [him] was actuated by malice[] and . . . there was an absence of probable cause." Id. at 395. As to the plaintiff's negligence claims against the defendant and its fraud examiner, the Court rejected the creation of a "'negligence back door' that avoids the intentionally difficult requirements for a malicious prosecution claim and, thereby, renders those requirements irrelevant." Id. at 403.

In Morris, the plaintiff entered a bank to make a withdrawal. 454 N.J. Super. at 206. Another individual entered the bank, handed the teller a robbery

A-3095-24

note, and then walked out of the bank with a stack of bills. Ibid. The plaintiff, unaware that a robbery had just occurred, was near the teller's counter when another bank employee saw the note, called 9-1-1, and told the operator the robber was still in the bank. Id. at 207. Other employees locked the doors until the police arrived, and responding officers interviewed the plaintiff as a witness. Ibid. Although the plaintiff was not arrested and was never considered a suspect, he filed a complaint alleging negligence, false imprisonment, assault, and violation of the Law Against Discrimination, N.J.S.A. 10:5-1 to -50. Morris, 454 N.J. Super. at 206-07.

In support of his negligence claims, the plaintiff contended the employee's actions departed from the bank's procedure, which provided an employee should call the police only after a robber has left the bank. Id. at 207. The plaintiff claimed the employee provided information that led police to believe he was the perpetrator, which resulted in emotional damages to him. Id. at 208. In affirming the grant of summary judgment to the defendant, we held "[a] defendant's internal policies—standing alone—cannot demonstrate [an] applicable standard of care." Id. at 210 (alterations in original) (quoting Cast Art Indus., LLC v. KPMG LLP, 416 N.J. Super. 76, 106 (App. Div. 2010)). After surveying case law from other jurisdictions, we "refuse[d] to recognize a

11

new cause of action for negligent misidentification that is inconsistent with our State's strong public policy encouraging citizen cooperation with law enforcement officials in the investigation of criminal activity." Id. at 212-13.

While the facts of this case are not on all fours with either Brunson or Morris, the distinctions do not alter the outcome here. Because of the public policy concerns implicated in permitting a civil cause of action to redress criminal wrongs, our courts have limited a plaintiff's remedy to a cause of action for malicious prosecution. In such actions, a plaintiff must meet the high burden of demonstrating the prosecution was actuated by malice, based on something other than the absence of probable cause. Brunson, 199 N.J. at 395-96. Here, plaintiff's claim fails because it alleges negligence "as a surrogate for a malicious prosecution claim," id. at 385, which is not a cognizable cause of action in New Jersey.

Although mentioned in her complaint, plaintiff, for the first time on appeal, provides emails she contends are proof "TD Bank[] admitted its mistake afterwards and advised that there were sufficient funds in the account, but that there was a clerical/computer error on its end which caused the mistake." We decline to consider an issue not properly presented to the trial court unless the court's jurisdiction is implicated or the matter concerns an issue of great public

12

importance.  <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973).  Neither circumstance is present in this matter.

Even if we were to consider the emails, they demonstrate neither an admission nor the basis for liability.  No one in the email chain appears to be associated with TD Bank nor does anyone make representations on its behalf.  And even if defendant admitted a mistake, it does not alter our analysis of plaintiff's claim under the prevailing case law.

The motion judge's decision granting summary judgment to defendant was sound.  For these reasons, we discern no abuse of discretion in the subsequent denial of plaintiff's motion for reconsideration.  <u>Branch v. Cream-O-Land Dairy</u>, 244 N.J. 567, 582 (2021).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-3095-24