# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2619-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.B.N.,

     Defendant,

and

G.R.F.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.F.F.,
a minor.

_____

Submitted February 4, 2026 – Decided March 3, 2026

Before Judges Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0014-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Bruce P. Lee, Designated Counsel, on the briefs).

Jennifer Davenport, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Lakshmi Barot, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Neha Gogate, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant G.R.F. (George) appeals from the Family Part's March 21, 2025 judgment terminating his parental rights to his biological daughter, J.F.F. (Jane).[1] At trial, the Division of Child Protection and Permanency (the Division) presented the testimony of a psychologist who had performed evaluations and issued reports in the case. George focuses this appeal on that witness's testimony and his psychological evaluation of him and the court's reliance on them. He contends the procedure followed by the psychologist and the opinions rendered

---

[1] We refer to the parties and the child involved in this case using either initials or pseudonyms to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(12).

A-2619-24

by him were flawed, deprived him of due process, and tainted the court's opinion, requiring reversal. He also argues the court's denial of an adjournment request and the alleged ineffective assistance of his counsel warrant reversal. We disagree and affirm.

I.

Jane was born in December 2022. The Division received a referral from the hospital where she was born because she had tested positive for cocaine and opiates. Jane's biological mother, A.B.N. (Anne), also tested positive for cocaine and opiates at the time of Jane's birth and disclosed she had not had any prenatal care.[2] Jane was sent to the neonatal intensive care unit "due to respiratory issues, needing oxygen, and being small for her gestational age." She was treated with morphine for neonatal abstinence syndrome and antibiotics for suspected neonatal sepsis. Jane was medically cleared for discharge on January 17, 2023.

The Division sought an emergency removal, and the court entered an order on January 19, 2023, granting the Division custody of Jane. The Division removed Jane from defendants due to concerns about their "homelessness,"

---

[2] In the March 21, 2025 judgment, the court also terminated Anne's parental rights. She did not appear at the trial or participate in this appeal.

"unstable employment," and "substance abuse," as well as Anne's "mental health concerns." The Division initially placed Jane in an unrelated licensed resource home. When Jane was approximately six-months old, the Division placed Jane with T.M. (Tina), who is Anne's aunt. Tina became Jane's resource parent, and Jane has continued to reside with her. At trial, after confirming she had twice discussed adoption and kinship legal guardianship with the Division, Tina testified she wanted to adopt Jane and did not want to participate in a kinship legal guardianship.

In a December 1, 2023 order, the trial court changed Jane's permanency goal from reunification to termination of parental rights followed by adoption with a concurrent secondary goal of reunification. In that order, the court found the Division had provided defendants with "referrals to substance abuse evaluations/treatment, random drug screens, psychological evaluations, psychiatric evaluations, [and] individual counseling services" and had "conducted supervised visitation [and] assisted with transportation." The court also found defendants "continue[d] to struggle with substance abuse, mental health, and homelessness, and have failed to meaningfully engage in court ordered services and visit with the minor child consistently since the child has been in the Division's custody" and that "[n]either parent has demonstrated a

significant period of sobriety or successfully completed recommended substance abuse treatment services."

On January 11, 2024, the Division filed a complaint, seeking the termination of defendants' parental rights. The trial of that action initially was scheduled to begin in September 2024. It was adjourned to January 14, 2025. On the first day of trial, defense counsel requested an adjournment, advising the court for the first time that she had not been able to access certain documents provided by the Division through the "Box" virtual storage system: updated contact sheets, case plans, and the psychological evaluation of George prepared by the Division's expert witness, Dr. Alan Lee. Dr. Lee prepared the evaluation after conducting a two-day interview of George while George was incarcerated in the county jail.[3]

Objecting to the adjournment request, the Division's counsel explained she had sent the items through the "Box" to defense counsel on December 30, 2024, instructed defense counsel on how to access the documents when she learned she had been unable to access them, sent a follow-up email on January

---

[3] Dr. Lee also submitted and testified about a bonding evaluation he had performed regarding Tina and Jane. Dr. Lee did not prepare a bonding evaluation regarding George and Jane because George had not reported for the scheduled bonding-evaluation session with Jane.

3, 2025, did not hear from defense counsel until the weekend before the trial, and emailed defense counsel a copy of Dr. Lee's report and curriculum vitae the day before the trial.

Noting the trial already had been adjourned once, the court denied the adjournment request. The court found the Division's counsel had "delivered [the documents] two weeks in advance of the trial. And they just weren't opened." The court faulted defense counsel for failing to contact the court or opposing counsel the "minute [she] perceived a problem" and for waiting until the day of trial to seek an adjournment even though she had known about the discovery issue for weeks. The court found the trial exhibits that were the "meat and potatoes of the case" had been sent in October 2024 and that "the supplemental discovery [wa]s not very voluminous." Regarding Dr. Lee's report, the court stated Dr. Lee would "be back for a second day" of testimony. The court also noted the case had been "adjourned since September." Before Dr. Lee began to testify that day, the court reiterated to defense counsel, "[h]e's not going to finish today. So you'll have plenty of time to look at [the psychological evaluation] before you do cross. But you won't start your cross today."

On January 14, 2025, Tina and Dr. Lee testified. On March 11, 2025, direct examination of Dr. Lee continued, and defense counsel cross-examined

him.  A Division case worker also testified.  Neither George nor Jane's law guardian called any witnesses or presented any evidence.

In a March 20, 2025 oral decision, the court found the Division had proved by clear and convincing evidence the four prongs of the best-interests test set forth in N.J.S.A. 30:4C-15.1(a) and granted the Division's application to terminate defendants' parental rights.  The court entered a judgment memorializing its decision the next day.

George appeals that judgment.  Jane's law guardian joins with the Division in opposing the appeal.

II.

The termination of parents' rights to raise their children is a matter of constitutional magnitude.  See In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999).  Those rights, however, are "not absolute" and are limited "by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent."  N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 447 (2012).

"Children have their own rights, including the right to a permanent, safe and stable placement."  N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super.

7

76, 111 (App. Div. 2004). Our courts have acknowledged "the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child." Ibid. Thus, a parent's interest must, at times, yield to the State's obligation to protect children from harm. See N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009).

Consequently, the law requires a balancing of those two competing interests: the parents' constitutionally protected right to raise their children, absent state interference, and the State's responsibility to protect the welfare of children. N.J. Div. of Child Prot. & Permanency v. D.C.A., 256 N.J. 4, 20 (2023). That balancing "is achieved through the best interests of the child standard." Ibid. (quoting K.H.O., 161 N.J. at 347). The Legislature codified that standard in N.J.S.A. 30:4C-15.1(a). See D.C.A., 256 N.J. at 21 (recognizing the Legislature codified "the best[-]interests test" when it enacted N.J.S.A. 30:4C-15.1(a)).

Thus, when seeking termination of parental rights, the Division must establish, by clear and convincing evidence, the following four-prong criteria set forth in N.J.S.A. 30:4C-15.1(a), as amended by the Legislature in 2021:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 612 (1986) (applying the clear-and-convincing standard in a parental-rights termination case). These four prongs are "not discrete and separate" but rather "overlap to offer a full picture of the child's best interests." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 554 (2014).

We give substantial deference to the trial court's opportunity to have observed the witnesses first-hand and to evaluate their credibility. Id. at 552. "Our general deference on appeal is also informed by the Family Part judge's 'feel of the case[,]'" N.J. Div. of Child Prot. & Permanency v. D.H., 469 N.J. Super. 107, 116 (App. Div. 2021) (quoting N.J. Div. of Youth & Fam. Servs. v.

E.P., 196 N.J. 88, 104 (2008)), and by the Family Part's "special expertise in matters related to the family[,]" F.M., 211 N.J. at 448. Accordingly, we defer to the trial court's factual findings "and uphold those findings if they are grounded in substantial and credible evidence in the record." D.C.A., 256 N.J. at 19. The trial court's decision should be reversed on appeal only if its findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)); see also N.J. Div. of Child Prot. & Permanency v. D.A., 477 N.J. Super. 63, 80 (App. Div. 2023). We review the trial court's legal conclusions de novo. R.G., 217 N.J. at 552-53; see also D.C.A., 256 N.J. at 19 (acknowledging we give no deference to the trial court's interpretation of N.J.S.A. 30:4C-15.1(a)).

"We defer to a trial court's evidentiary ruling absent an abuse of discretion." State v. Garcia, 245 N.J. 412, 430 (2021). "In a termination of parental rights trial, the evidence often takes the form of expert opinion testimony by psychiatrists, psychologists, and other mental health professionals." N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146 (2018). "The admissibility of expert testimony 'is committed to the sound discretion of the trial court.'" Weissman v. Li, 482 N.J. Super. 587, 594 (App.

Div. 2025) (quoting Townsend v. Pierre, 221 N.J. 36, 52 (2015)), petition for certif. filed, No. 091617 (Dec. 30, 2025). "[T]he trial court has discretion in determining the sufficiency of the expert's qualifications and [its decision] will be reviewed only for manifest error and injustice." Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 68 (2019) (second alteration in original) (quoting State v. Torres, 183 N.J. 554, 572 (2005)) (internal quotation marks omitted). "We also defer to the trial court's assessment of expert evaluations." N.J. Div. of Youth & Fam. Servs. v. H.R., 431 N.J. Super. 212, 221 (App. Div. 2013).

### A.

We first address George's challenge to the court's findings under the first, second, and fourth prongs of the best-interests test.[4]

"The first two prongs [of the best-interests test], N.J.S.A. 30:4C-15.1(a)(1) and (2), are 'the two components of the harm requirement' and 'are related to one another.'" N.J. Div. of Child Prot. & Permanency v. T.D., 454

---

[4] In his merits brief George argues the court's legal conclusions on prongs "I, I, and IV" were erroneous. Based on that typo, the Division contends that whether George is challenging the court's finding under prong II is unclear and, consequently, he did not brief the issue, and we should not consider it. See Morris v. T.D. Bank, 454 N.J. Super. 203, 206 n.2 (App. Div. 2018) ("An issue not briefed is deemed waived on appeal."). However, the substance of George's briefs makes clear he is challenging the court's prong II findings. Accordingly, we consider the argument because he did not waive it.

N.J. Super. 353, 380 (App. Div. 2018) (quoting In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999)). "Therefore, 'evidence that supports one informs and may support the other as part of the comprehensive basis for determining the best interests of the child.'" Ibid. (quoting D.M.H., 161 N.J. at 379).

Under the first prong, "the Division must prove harm that 'threatens the child's health and will likely have continuing deleterious effects on the child.'" N.J. Dep't of Child. & Fams. v. A.L., 213 N.J. 1, 25 (2013) (quoting K.H.O., 161 N.J. at 352). The Division need not "wait 'until a child is actually irreparably impaired by parental inattention or neglect.'" F.M., 211 N.J. at 449 (quoting D.M.H., 161 N.J. at 383).

Under prong two, "the inquiry centers on whether the parent is able to remove the danger facing the child." Id. at 451 (citing K.H.O., 161 N.J. at 352); see also D.C.A., 256 N.J. at 27 (finding prong two as amended was intended "to ensure that parental fitness - not the child's bond with resource parents - is the core inquiry when a judge considers the best[-]interests standard's second prong in a termination of parental rights case").

Prong four, N.J.S.A. 30:4C-15.1(a)(4), "serves as a fail-safe against termination even where the remaining standards have been met." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 609 (2007). "The question

12

ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with th[e] parent." E.P., 196 N.J. at 108. In making that determination under the fourth prong, the court may consider evidence regarding the bond between the child and the resource parents. See D.C.A., 256 N.J. at 28 (holding the 2021 amendment to N.J.S.A. 30:4C-15.1(a) "precludes a court from considering the bond between a child and resource parents under the second prong of the best[-]interests standard but does not bar such evidence when the court addresses that standard's fourth prong").

George contends we must reverse the termination judgment because the court's decision was "tainted" by Dr. Lee's purportedly improper reliance on George's "confidential juvenile criminal history," "allegations set forth in [the Division's] complaints," "[George's] intelligence," and "the [Rorschach] inkblot test." George questions Dr. Lee's competence and skill, asserting Dr. Lee was untruthful, did not review the Division's contact sheets, and relied on allegations instead of primary sources in rendering his opinions. He argues Dr. Lee violated his due-process rights by asking him about his juvenile and adult criminal history during the evaluation.

At trial, defense counsel did not object to the admission of Dr. Lee as an expert in psychological evaluation and bonding or the admission of his psychological evaluation of George. Thus, we consider George's argument under the plain-error standard set forth in Rule 2:10-2. "The failure of defendant to have interposed an objection to the expert's testimony limits our review to a search for plain error." State v. Nesbitt, 185 N.J. 504, 516 (2006); see also State v. Singh, 245 N.J. 1, 13 (2021). Under the plain-error standard of review, "[t]he mere possibility of error is insufficient for reversal." N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 622 (App. Div. 2010). "Plain error is that which is 'clearly capable of producing an unjust result.'" State v. Singleton, 211 N.J. 157, 182 (2012) (quoting R. 2:10-2); see also Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018).

At trial and in its decision on the record, the court found Dr. Lee to be qualified as an expert in the fields of psychological evaluations and bonding. The court noted Dr. Lee had testified in over 1,000 cases, including many before the court. The court found Dr. Lee to be credible and that his opinions were "supported by what he observed" and "by [George's] conduct outside of Dr. Lee['s]" evaluation. The court determined George lacked housing, employment, and financial stability; had minimal contact with Jane; failed to complete

services offered by the Division; and, although he denied having "a drug problem," had an "escalating" criminal history involving distribution of controlled drugs and continuing involvement with narcotics – facts supported by credible evidence in the record separate from Dr. Lee's testimony and evaluation.

George faults Dr. Lee for disagreeing with his counsel's use of the term "unspecified," describing the Rorschach inkblot method as being "commonly relied upon by mental health professionals doing this type of evaluation," not reviewing the Division's contact sheets, and commenting on George's use of "street-wise vernacular." George had the opportunity to challenge Dr. Lee's testimony on these bases during cross-examination, and the court had the opportunity to assess Dr. Lee's testimony in its entirety. On the record before us, we perceive no abuse of discretion or misapplication of the law in the trial court's finding that Dr. Lee was credible and the court's consideration of his testimony and report.

Even if the trial court had erred, it would not reach the plain-error standard. George has not demonstrated the particular testimony about which he now complains was "clearly capable of producing an unjust result." R. 2:10-2. Regarding George's juvenile record, although the court noted he "had juvenile

15

arrests and charges," it ultimately found "[h]e was never detained as a juvenile." In listing George's "issues," the court did not reference George's juvenile history. Instead, it found George had been "in and out of jail" as an adult. The court was concerned about George's "escalating" criminal history and continuing involvement with narcotics. George faults Dr. Lee for opining about his intelligence, contending his opinion was based on observation and not "actual testing." But according to his report, Dr. Lee conducted a cognitive functioning test, concluding George was "free of severe overall deficits or disease," and, while recognizing George's "intellectual functioning was not currently measured by a standardized test," he estimated George "to be around the Average or Low Average classification and free of severe overall deficits or disease" – hardly negative findings.

George contends on appeal Dr. Lee issued a net opinion. We disagree. "The net opinion rule . . . mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Townsend, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)); see also In re Civil Commitment of A.Y., 458 N.J. Super. 147, 169 (App. Div. 2019). Dr. Lee met that standard. "The net opinion rule is not a standard of perfection."

16

Townsend, 221 N.J. at 54. "The rule does not mandate that an expert organize or support an opinion in a particular manner that opposing counsel deems preferable." Ibid. "An expert's proposed testimony should not be excluded merely 'because it fails to account for some particular condition or fact which the adversary considers relevant.'" Ibid. (quoting Creanga v. Jardal, 185 N.J. 345, 360 (2005)) (internal quotation marks omitted). George's disagreement with Dr. Lee's conclusions or methodology does not render Dr. Lee untruthful, his opinion a net opinion, or the court's reliance on his report and testimony reversible error.

We also are not persuaded by George's claim his due-process rights were violated because he provided Dr. Lee with information regarding his juvenile history during his evaluation sessions. George contends Dr. Lee's questioning George during the evaluation sessions about his criminal history is "akin to forcing his testimony at trial." It isn't.

"Due process requires adequate notice and a fair opportunity to be heard." Div. of Youth & Fam. Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div. 2003); see also S.C. v. N.J. Dep't of Child. & Fams., 242 N.J. 201, 238 (2020). Due process "is a flexible concept and calls for such procedural protections as the particular situation demands." M.Y.J.P., 360 N.J. Super. at 464. A court

A-2619-24

considers the following factors when determining "[t]he protections needed to ensure due process where governmental action is to be taken," id. at 465:

> (1) identification and specification of the private interest that will be affected by the official action; (2) assessment of the risk that there will be an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) evaluation of the governmental interest involved, including the added fiscal and administrative burdens that additional or substitute procedures would require.
>
> [Ibid. (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).]

Applying those factors, we see no due-process violation. The Division filed the complaint seeking the termination of defendants' parental rights on January 11, 2024. The evaluation sessions with George took place on August 30 and September 23, 2024. The trial did not begin until January 14, 2025, and the cross-examination of Dr. Lee took place on March 11, 2025. Nothing in the record indicates George was deprived of adequate notice of or a fair opportunity to be heard regarding Dr. Lee's evaluation. Moreover, George's confidentiality concerns are addressed by Rule 1:38-3(d)(12), which excludes from public access records relating to Division proceedings held pursuant to Rule 5:12, including proceedings regarding the termination of parental rights.

18

George's only basis for challenging the court's findings under the first, second, and fourth prongs of the best-interests test was the court's reliance on Dr. Lee's report and testimony. For the reasons stated, we reject that argument. The trial court thoroughly addressed all four statutory factors for termination. Viewing the record as a whole, as detailed in the trial court's comprehensive opinion, we agree the record contains adequate "substantial and credible evidence" to support the court's decision to terminate George's parental rights. D.C.A., 256 N.J. at 19.

B.

We next address George's argument the court abused its discretion in denying his counsel's adjournment request. "New Jersey long has embraced the notion that '[a] motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears from the record that the defendant suffered manifest wrong or injury.'" State v. Hayes, 205 N.J. 522, 537 (2011) (alteration in original) (quoting State v. Doro, 103 N.J.L. 88, 93 (E. & A.1926)); see also Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 233 (App. Div. 2020) (finding whether the court abused its discretion in denying an adjournment request "depends on the amount of prejudice suffered by the aggrieved party" and this court will not reverse a denial of an adjournment

request "'unless an injustice has been done'" (quoting <u>Nadel v. Bergamo</u>, 160 N.J. Super. 213, 218 (App. Div. 1978))).  "Trial judges retain considerable latitude in balancing the appropriate factors" when deciding whether to grant an adjournment request.  <u>State v. Kates</u>, 216 N.J. 393, 397 (2014); <u>see also</u> <u>State v. Miller</u>, 216 N.J. 40, 65 (2013) ("A motion for an adjournment implicates a trial court's authority to control its own calendar and is reviewed under a deferential standard.").

Some of the factors a court should consider when deciding an adjournment request include:

> [T]he length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [<u>Kates</u>, 216 N.J. at 396 (quoting <u>State v. Furguson</u>, 198 N.J. Super. 395, 402 (App. Div. 1985)).]

20

Applying those factors to the circumstances surrounding defense counsel's adjournment request, we conclude the court did not abuse its discretion in denying the request. The court reasonably declined to adjourn a trial involving the permanency of a minor that already had been adjourned once. The reason for the adjournment request was defense counsel's inability to access documents that had been made available two weeks before trial, an issue she did not raise with the court until the first day of trial. The Division did not complete its direct examination of Dr. Lee that day, and defense counsel had nearly two months to prepare for the resumption of direct examination and the beginning of cross-examination. George has not identified what he or his counsel would have done differently had the court granted the adjournment request. On that record, we perceive no abuse of discretion in the court's denial of the adjournment request.

C.

Finally, we address George's ineffective-assistance-of-counsel argument. George contends his counsel rendered ineffective assistance in that she failed to timely notify the Division of her difficulty in accessing the supplemental trial exhibits, timely request an adjournment based on that difficulty, and object to Dr. Lee's reliance on George's juvenile history and Rorschach inkblot test results.

A-2619-24

A defendant in a parental-rights termination case has a constitutional right to effective assistance of counsel. N.J. Div. of Youth & Fam. Servs. v. B.R., 192 N.J. 301, 306 (2007). To establish an ineffective-assistance-of-counsel claim, a defendant must meet the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by the New Jersey Supreme court in State v. Fritz, 105 N.J. 42, 58 (1987). The test requires the defendant show trial counsel's performance was "objectively deficient" and that the deficient performance prejudiced the defense, meaning "there must be 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" B.R., 192 N.J. at 307 (quoting Strickland, 466 U.S. at 694); see also N.J. Div. of Child Prot. & Permanency v. P.D., 452 N.J. Super. 98, 116 (App. Div. 2017) (same). A failure to satisfy either prong of the Strickland test defeats the ineffective-assistance claim. Strickland, 466 U.S. at 700; State v. Nash, 212 N.J. 518, 542 (2013).

The better course would have been for George's counsel to advise the Division of her difficulty in accessing the documents in the "Box" and to request an adjournment sooner rather than later. But we cannot say her failure to do so or her purported failure to object to certain aspects of Dr. Lee's report or testimony constituted errors "so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  Reviewing courts must make "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also Nash, 212 N.J. at 542.  Moreover, even if George demonstrated counsel's alleged errors met the first prong of Strickland, he has not shown he was prejudiced by those errors given Dr. Lee's direct examination and cross-examination were completed months after the first day of trial and how little consideration the court gave in its decision to George's juvenile history and Rorschach test results.  "Prejudice is not to be presumed.  The defendant must 'affirmatively prove prejudice.'"  State v. Gideon, 244 N.J. 538, 551 (2021) (citation omitted) (quoting Strickland, 466 U.S. at 693).  For these reasons, his ineffective-assistance argument fails.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

23

A-2619-24